ROSE M. MALFABON, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF EDELMIRA ACOSTA, APPELLANT, v. EVA GARCIA, ESQ., RESPONDENT.

No. 22846

June 27, 1995                                     898 P.2d 107

*Burke & Christopherson*, Las Vegas, for Appellant.

*Rawlings, Olson & Cannon*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Rose Malfabon (Malfabon) was involved in an accident while driving her Toyota Tercel. As a result of the accident, a fire ensued and Malfabon's daughter died. Malfabon consulted with respondent Eva Garcia (Garcia), an attorney licensed to practice law in Nevada, to assist her in collecting insurance benefits and in pursuing a products liability suit against Toyota. Upon Garcia's recommendation, Malfabon accepted Toyota's proffered $200,000 settlement. Malfabon subsequently sued Garcia, alleging breach of fiduciary duty and legal malpractice. The district court dismissed Malfabon's complaint with prejudice, finding that Malfabon had entered into a settlement agreement, and therefore, she was precluded from bringing a malpractice action against Garcia. We disagree with the district court and reverse and remand this case.

### FACTS

On May 16, 1988, Malfabon was driving with her twelve-year-old daughter, Edelmira Acosta (Edelmira), from Los Angeles to her home in Las Vegas. Soon after they passed the Halloran Summit in California on Interstate 15, Malfabon's car hit the left hand rumble strip. Believing that she had a ruptured tire, Malfabon overcorrected her car. The car skidded off the highway and hit a culvert, causing the car to flip end over end. After futile rescue attempts, Malfabon watched as her daughter died in the fire. Malfabon also suffered injuries as a result of the accident. Malfabon asserts that the fire resulted from design defects in her Toyota car.

To explore the possibility of recovering damages for her injuries and the death of her daughter, Malfabon's stepfather, Mr. Mendoza, contacted Garcia in Nevada. Garcia was to represent Malfabon with respect to collecting any insurance benefits available and also with respect to a products liability case against Toyota Motors. Garcia hired respondent John Shoosmith, an attorney licensed to practice in California, to file a complaint in

California before the statute of limitations expired. Malfabon did not enter into any retainer agreement with Garcia or Shoosmith.

Garcia commenced an investigation and contacted Toyota regarding a products liability action. Garcia hired a private investigator to assist in the investigation and negotiation of the claim against Toyota. The investigator sent a demand letter to Toyota. In response to the demand letter, Toyota, while denying liability, offered $200,000 as a settlement. After investigating the claim and consulting with another attorney, Garcia advised Malfabon to accept the settlement agreement. Malfabon executed the settlement agreement on June 28, 1989.[1] The settlement agreement included a claim for the estate of Edelmira, over which Malfabon had been named special administrator. Garcia retained her costs and fees, and the settlement agreement provided that she would receive one-third of all future annuities paid to Malfabon.

Edelmira's natural father, Alfredo Acosta (Acosta), was incarcerated in Los Angeles at the time of the accident. After his release from jail, Acosta renewed his relationship with Malfabon. He subsequently filed a lawsuit in federal district court against Toyota, claiming his own damages resulting from his daughter's death. Malfabon contends that Garcia made no attempts to give notice of the settlement to Acosta.

On June 28, 1991, Malfabon initiated this suit against Garcia for malpractice. Malfabon alleged that Garcia committed legal malpractice by failing to adequately investigate her claims against Toyota and properly ascertain the value of the case in negotiating the settlement. Malfabon claimed that Garcia overlooked any potential road design defects in the car and waived the same by recommending that Malfabon consummate the offer of settlement.

Malfabon also alleged that Garcia owed her a contractual duty to effectively and competently represent her against Toyota, and by recommending the low settlement amount, Garcia breached this contract. Finally, Malfabon claimed that Garcia owed her a fiduciary duty, which she breached. She based this on Garcia's failure to notify Acosta and on Garcia's knowledge that Malfabon was not competent to make proper decisions about the settlement agreement.

Garcia filed a motion to dismiss Malfabon's malpractice suit for failure to state a claim on which relief can be granted. The district court granted Garcia's motion dismissing Malfabon's action with prejudice. This appeal ensued.

---

[1]The settlement agreement provides that the "parties agree that neither they nor their attorneys nor representatives shall reveal to anyone, other than as may be mutually agreed to in writing, any of the terms of this Settlement Agreement and Release or any of the amounts, numbers or terms and conditions of any sums payable to Claimants hereunder."

## DISCUSSION

In reviewing a motion to dismiss, this court is bound to accept all of the factual allegations in the complaint as true. Edgar v. Wagner, 101 Nev. 226, 699 P.2d 110 (1985). Next, this court determines whether the appellant asserts specific allegations sufficient to constitute the elements of a claim on which this court can grant relief. Marcoz v. Summa Corporation, 106 Nev. 737, 801 P.2d 1346 (1990). On a motion to dismiss for failure to state a claim, the court must construe the pleadings liberally and draw every fair inference in favor of the plaintiff. Capital Mortgage Holding v. Hahn, 101 Nev. 314, 705 P.2d 126 (1985).

Malfabon contends that respondent's motion to dismiss effectively constitutes a motion for summary judgment. *See, e.g.,* Bernard v. Rockhill Dev. Co., 103 Nev. 132, 135-36, 734 P.2d 1238, 1240 (1987); Stevens v. McGimsey, 99 Nev. 840, 673 P.2d 499 (1983); Paso Builders, Inc. v. Hebard, 83 Nev. 165, 426 P.2d 731 (1967). Under NRCP 12(c), "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In the instant case, it appears that the district court may have considered such materials as Garcia's deposition and medical reports, and therefore, this court should treat the motion to dismiss as a motion for summary judgment. *See Bernard,* 103 Nev. at 135-36, 734 P.2d at 1241 (citations omitted).

Malfabon contends that a factual dispute exists with respect to: (1) the competence and effectiveness of Garcia's representation of Malfabon, and (2) Malfabon's competence when she entered the settlement agreement. Malfabon also asserts that the district court improperly concluded that an attorney cannot be liable for malpractice following settlement.

We have traditionally held that a client may bring an action against an attorney based on either a negligence or contractual theory. Warmbrodt v. Blanchard, 100 Nev. 703, 706-07, 692 P.2d 1282, 1285 (1984); *see also* Collins v. Reynard, 607 N.E.2d 1185 (Ill. 1992). The district court concluded that an attorney cannot be held liable for legal malpractice once a settlement is reached that has been approved and signed by the client. We disagree.

One court has questioned whether it is good public policy to permit a client to file suit claiming negligent advice or assistance

after the consummation of the settlement agreement by the client. Muhammad v. Stassburger, et al., 587 A.2d 1346 (Pa. 1991), *cert. denied,* 502 U.S. 867, 112 S. Ct. 196 (1991). The reluctance in *Muhammad* to permit lawsuits asserting simple negligence principles is based primarily on the policy to favor the settlement of lawsuits and give meaningful effect to such efforts. As explained in *Muhammad:*

> The primary reason we decide today to disallow negligence or breach of contract suits against lawyers after a settlement has been negotiated by the attorneys and accepted by the clients is that to allow them will create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that "could have been done, but was not." We refuse to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases. A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them.

*Muhammad,* 587 A.2d at 1349.

Although we realize the benefits provided by the settlement of cases and the laudable policy to effectuate them, we still believe that the standard of proof should be simple negligence when an attorney is sued by a client, even if the client has approved and consummated a settlement. In reaching this conclusion, we agree with Grayson v. Wofsey, Rosen, Kweskin, 646 A.2d 195 (Conn. 1994). In *Grayson,* the court reasoned as follows:

> We reject the invitation of the defendants, however, to adopt a rule that promotes the finality of settlements and judgments at the expense of a client who, in reasonable reliance on the advice of his or her attorney, agrees to a settlement only to discover that the attorney had failed to exercise the degree of skill and learning required of attorneys in the circumstances. "Although we encourage settlements, we recognize that litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we insist that the lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks."

*Id.* at 199 (quoting Ziegelheim v. Apollo, 607 A.2d 1298 (N.J. 1992)). In an action sounding in contract, the burden faced by a plaintiff would be that set by the agreement between the parties.

Malfabon asserts that a proper investigation would have indicated a potential recovery significantly exceeding the settlement offer and would have uncovered cases supporting a higher recovery amount, as in Toyota Motor Co. v. Moll, 438 So. 2d 192 (Fla. Dist. Ct. App. 1983). In *Moll,* the jury awarded the plaintiff $2,004,886 in compensatory damages and $3,000,000 in punitive damages for an automobile accident relating to the fuel system. In light of the recovery in *Moll,* Malfabon asserts that Garcia settled for substantially less than what Malfabon could have recovered.

Garcia contends that Malfabon's argument on this issue is mere speculation because the facts of each case are different. Garcia states that she used her best judgment and expertise in recommending the settlement amount in the context of the unique factors of Malfabon's case.

Giving Malfabon all favorable inferences to be drawn from the facts presented, there is a material issue of fact concerning whether Garcia was negligent in advising Malfabon to accept this settlement.

Malfabon also claims that there is a factual dispute regarding her competence. Since Toyota is not a party to this lawsuit, a determination of Malfabon's incompetence would not have any binding effect on the settlement reached. However, the issue of Malfabon's competence and ability to understand as known to Garcia should be part of the factual determinations made in determining whether Garcia was in any way negligent.[2]

## CONCLUSION

We conclude that issues of fact remain as to whether Garcia handled Malfabon's case with the requisite standard of care, and whether Garcia was negligent in assessing or evaluating Malfabon's competence to enter into the settlement agreement. Accordingly, the district court erred in granting Garcia's motion to dismiss. We decline to follow the logic set forth in *Muhammad* and choose to allow plaintiffs to sue attorneys for malpractice, even after a settlement agreement has been signed. Given our conclusion, it is unnecessary to address the other issues raised by

---

[2]To prove that she was incompetent when she signed the settlement agreement, Malfabon offers a medical report dated February 22, 1989, approximately four months after Malfabon signed the settlement agreement. The report concluded that although Malfabon was alert and aware, she had difficulty with cognitive tests requiring concentration. The report also revealed that Malfabon was depressed, entertained phobias about leaving her home, and that she was unable to return to her job. A final assessment of Malfabon's mental capacities indicated that Malfabon was felt not to be capable of carrying out job instructions at that time in work of any level of complexity, and that she needed some assistance in managing her money.

the parties. Accordingly, we reverse the district court's dismissal of Malfabon's case and remand for proceedings consistent with this opinion.[3]

---

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.