David WHITAKER, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 00SC866.

Supreme Court of Colorado, En Banc.

June 3, 2002.

As Modified on Denial of Rehearing June 24 and July 1, 2002.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Robert Mark Russel, Assistant Solicitor General, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

A jury convicted the defendant, David Whitaker, of possessing with intent to distribute over 1,000 grams of methamphetamine, a schedule II controlled substance, and importing methamphetamine into Colorado. Whitaker claimed that his conviction should be reversed because the trial judge did not instruct the jury to apply the mens rea of "knowingly" to both the quantity and the importation of the drug. The court of appeals upheld Whitaker's conviction. We agree.

We hold that the General Assembly, in section 18–18–405, did not intend to apply a culpable mental state to the quantity of drugs the defendant distributed, manufactured, dispensed, sold, or possessed. We also hold that importation under Colorado's

special offender statute, section 18–18–407, does not include a mens rea requirement. The jury found beyond a reasonable doubt that the defendant possessed the drug quantity specified by section 18–18–405(3)(a)(III), and imported the drugs across state lines as specified by section 18–18–407(1)(d). Accordingly, we uphold Whitaker's conviction and sentence.

## I.

On January 14, 1998, David Whitaker was a passenger on a Greyhound bus en route from Los Angeles, California to Denver, Colorado. The bus stopped in Grand Junction, Colorado for routine service and to change drivers. Passengers were required to leave the bus during this stop. After the passengers had reboarded, three Grand Junction Police Department officers entered the bus, identifying themselves as police officers. Two of the officers began talking to each of the bus passengers, including Whitaker.

The officers testified that Whitaker appeared nervous while talking to them. When asked about his luggage, Whitaker told the police that he had none. The officers pointed to a black bag near Whitaker and asked if it was his. Whitaker responded that it was not his bag, but said he had placed his jacket and a few other items inside it because no one else appeared to be using it. Whitaker then consented to a search of the bag. The officers discovered 8.8 pounds of uncut methamphetamine contained in several duct tape covered packages inside the bag.

The prosecution charged Whitaker with several drug offenses.[1] At trial, Whitaker argued that he did not possess the drugs and did not know that the packages of drugs were in the bag. The defense did not dispute the facts that the bag contained 8.8 pounds of methamphetamine and that the drugs came across Colorado's state lines via the Greyhound bus. The jury convicted Whitaker of possessing 1,000 grams or more of a schedule II controlled substance with intent to distribute and importation of a schedule II controlled substance. The trial court sentenced him to twenty years in state prison.

The court of appeals affirmed Whitaker's conviction and sentence. *People v. Whitaker*, 32 P.3d 511 (Colo.App.2000). The court of appeals found that the trial court had correctly instructed the jury on the elements of possession of 1,000 grams or more of a controlled substance with intent to distribute and on the charge of importation of a controlled substance. It held that the prosecution need not prove that Whitaker "knowingly" imported the controlled substance, nor that the defendant "knew" the drugs weighed more than 1,000 grams. *Id.* at 517–19. The court concluded that special offender drug importation under section 18–18–407(1)(d), 6 C.R.S. (2001), and the quantity of a controlled substance possessed under section 18–18–405, 6 C.R.S. (2001), have no mens rea requirement. *Id.* at 517–18.

We granted certiorari in *People v. Whitaker*, 32 P.3d 511 (Colo.App.2000), to review the court of appeals' judgment.[2] We uphold the judgment.

---

1. The prosecution charged Whitaker with the following offenses: Special Offender–Importation of a Schedule II Controlled Substance, § 18–18–407(1)(d), 6 C.R.S. (2001)(Sentence Enhancer); Possession of a Schedule II Controlled Substance–Intent to Distribute (1,000 Grams or More), § 18–18–405(3)(a)(III), 6 C.R.S. (2001); Possession of a Schedule II Controlled Substance–Intent to Distribute, § 18–18–405(2)(a)(I), 6 C.R.S. (2001); and Possession of Drug Paraphernalia, § 18–18–428(1), 6 C.R.S. (2001). The prosecution subsequently dismissed the two latter offenses prior to trial.

2. We granted certiorari on the following issues: 1. Whether the district court erroneously instructed the jury regarding the elements of the crime of possession of one thousand grams or more of a controlled substance with intent to distribute, and if the court of appeals erroneously concluded that the prosecution was not required to prove that petitioner knowingly possessed such amount to trigger an enhanced sentence?
2. Whether the district court erroneously treated petitioner's special offender charge as a "sentence enhancer" rather than as a substantive offense or as an element of the possession with the intent to distribute charge, and if the court of appeals incorrectly relied on *People v. Ramirez* to determine that the prosecution need not prove *mens rea* with respect to that charge?

## II.

We hold that the General Assembly, in section 18–18–405, did not intend to apply a culpable mental state to the quantity of drugs the defendant distributed, manufactured, dispensed, sold, or possessed. We also hold that importation under Colorado's special offender statute, section 18–18–407, does not include a mens rea requirement. The jury found beyond a reasonable doubt that the defendant possessed the drug quantity specified by section 18–18–405(3)(a)(III), and imported the drugs across state lines as specified by section 18–18–407(1)(d). Accordingly, we uphold Whitaker's conviction and sentence.

## A.

### Section 18–18–405 and Quantity of Drug

Whitaker argues that the trial court erroneously instructed the jury on the charge of possession with intent to distribute over 1,000 grams of a controlled substance, because it did not clearly instruct that the mens rea "knowingly" applied to the drug quantity. We disagree.

Section 18–18–405(3)(a)(III) applies to Whitaker because the jury convicted him of possessing more than 1,000 grams of methamphetamine, a schedule II controlled substance, with the intent to distribute. Section 18–18–405(3)(a)(III) defines the required sentence for a defendant convicted of unlawful distribution, manufacturing, dispensing, sale

or possession of 1,000 grams or more of a schedule I or II controlled substance.[3]

Whitaker argues that the quantity of drugs contained in section 18–18–405(3)(a)(III) is an essential element of the crime of possession with intent to distribute, and the mens rea contained in section 18–18–405(1)(a), "knowingly," must apply to it. However, whether the quantity of drugs involved in the offense requires a mens rea is a matter of statutory interpretation. "Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose and intent in enacting the statute." *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1152 (Colo.2001). "If the plain language of the statute clearly expresses the legislative intent, then the court must give effect to the ordinary meaning of the statutory language. Likewise, the court should avoid interpreting a statute in a way that defeats the obvious intent of the legislature." *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1068 (Colo.2002). We must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible. *Id.; Empire Lodge*, 39 P.3d at 1152.

Here, section 18–18–405(1)(a) defines the offense, and the provisions of 18–18–405(2), (3), (5) and (6) set forth the applicable punishment levels.[4] This statutory structure demonstrates the General Assembly's intent to separate sentencing factors, such as drug type and quantity, from the elements of the crime. Section 18–18–405(3)(a) does not pre-

3. Section 18–18–405(3)(a)(III), 6 C.R.S. (2001), provides:
   (3)(a) Except as otherwise provided in section 18–18–407 relating to special offenders, any person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly manufacturing, dispensing, selling, distributing, possessing, or possessing with intent to manufacture, dispense, sell, or distribute, or inducing, attempting to induce, or conspiring with one or more other persons, to manufacture, dispense, sell, distribute, possess, or possess with intent to manufacture, dispense, sell, or distribute an amount that is or has been represented to be:
   . . .
   (III) One thousand grams or one kilogram or more of any material, compound, mixture, or preparation that contains a schedule I or schedule II controlled substance as listed in section 18–18–203 or 18–18–204 shall be sen-

tenced to the department of corrections for a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense in section 18–1–105(1)(a).

4. Subsection (1) defines the elements of the offense covered by this statute. Subsection (2) defines the level of felony to be applied based upon the type of drug involved in the offense. Subsection (3) defines the required sentence for offenses involving various large quantities of drugs. Subsection (5) works to apply subsection (3) to those defendants who commit a section 18–18–405 offense two or more times within six months and the violations involve an aggregate amount of at least 25 grams of a controlled substance. Subsection (6) requires revocation of the offender's driver's license upon conviction.

scribe drug quantity as an element of the offense, nor does it require proof of a culpable mental state in regards to it. Section 18–18–405(1)(a) sets forth the elements of the crime; the mens rea applies to each of these.

Although section 18–18–405(1)(a) requires the prosecution to prove that the defendant "knowingly" distributed, manufactured, dispensed, sold or possessed the controlled substance, nothing in the statute's language suggests that the prosecution must show that the defendant "knew" the actual weight of the drugs under section 18–18–405(3)(a). To the contrary, section 18–18–405(3)(a) triggers the level of punishment upon proof that the drug quantity involved in the offense was "an amount that is or has been represented to be" the amount specified by subsections (I), (II), or (III) thereunder. In this case, based on the jury's verdict finding the quantity to be 1000 grams or more of a schedule I or II controlled substance, section 18–18–405(3)(a)(III) provided for a sentence to the department of corrections for a term greater than the maximum presumptive range, but not more than twice the maximum presumptive range provided for such offense in section 18–1–105(1)(a).

The statute thereby sets forth the drug quantity separately from the elements, with no mens rea requirement and with the apparent design of separating the applicable punishment from the creation and definition of the offense. *People v. Ramirez,* 997 P.2d 1200, 1208 (Colo.App.1999)(holding that quantity of a controlled substance possessed is not a substantive element of the offense), *aff'd by an equally divided court,* 43 P.3d 611 (Colo.2001).[5]

■ Any amount of drugs, even less than a usable quantity, can support a conviction under 18–18–405(1)(a). *Richardson v. People,* 25 P.3d 54, 58 (Colo.2001)("In a possession case, a jury may return a verdict of guilty if it finds, beyond a reasonable doubt,

that the defendant knowingly possessed any quantity of a controlled substance."). The quantity of drugs turns on objective standards and requires no inquiry into the defendant's state of mind. *See United States v. Normandeau,* 800 F.2d 953, 956 (9th Cir.1986)(stating that proof of the amount of drugs is far different from proof that the defendants knew of the amount).

■ The underlying purpose of section 18–18–405(3) is to punish more severely those offenders who deal with large quantities of controlled substances. The legislature's choice to do so is within its prerogative. *People v. Martinez,* 36 P.3d 201, 204 (Colo. App.2001); *see also Gorman v. People,* 19 P.3d 662, 666 (Colo.2000)(stating that we look to the legislative context to see if a mens rea requirement applies). Section 18–18–405(3)(a) does not create an additional element for the underlying substantive offense; rather, it defines circumstances that, if proven beyond a reasonable doubt, may require a sentence greater than the presumptive minimum contained in section 18-1-105(1)(a), 6 C.R.S. (2001). *See People v. Ceja,* 904 P.2d 1308, 1310 (Colo.1995)(stating that Colorado Supreme Court cases "have turned not on the quantity of substance found but rather on the knowing possession of that substance"); *Ramirez,* 997 P.2d at 1208 ("Section 18–18–405(3)(a), in itself, does not make possession unlawful and, therefore, does not set forth an offense.").

■ Here, the issue of drug quantity went to the jury and the possession with intent to distribute more than 1,000 grams of a schedule II controlled substance jury instruction clearly included the quantity of drugs as a fact that must be proven beyond a reasonable doubt. Thus, we find no error.[6] *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

---

5. Because the quantity of drugs is not an element of the offense under this statutory design, section 18–1–503(4) does not apply. *See* § 18–1–503(4), 6 C.R.S.2001 (providing that where a statute defining an offense contains a culpable mental state, that mental state applies to every element of the offense, unless an intent to limit its application clearly appears).

6. Because we find that "knowingly" does not apply to the quantity of drugs, we need not reach the question of whether or not the jury instruction in this case applied a mental state to the drug quantity.

### B.
### Section 18–18–407 and Importation of the Drug

The jury found beyond a reasonable doubt that Whitaker imported a controlled substance into Colorado, a special offender factual finding for the jury to make under section 18–18–407(1)(d), 6 C.R.S. (2001).[7] Whitaker argues a violation of his constitutional due process rights because the trial court did not instruct the jury to find any culpable mental state regarding the importation charge. He contends that: (1) the Colorado special offender statute creates a separate substantive offense or, alternatively, an additional element for the underlying offense; and (2) the mens rea of "knowingly" must apply to the special offender statute, section 18–18–407, 6 C.R.S. (2001). We disagree.

The plain language of Colorado's special offender statute with regard to importation does not include a culpable mental state. *See* § 18–18–407, 6 C.R.S. (2001). Rather, this provision deals with the level of punishment. *Vega v. People*, 893 P.2d 107, 112 (stating that importation provision addresses punishment, not the creation of a substantive offense).[8] The plain language of the statute indicates that "(1) it is triggered only after a felony drug conviction, and (2) its effect is to increase the required sentencing range upon a finding of one of the specified 'aggravating circumstances.' " *Vega*, 893 P.2d at 113. "Once a jury has determined that a defendant possessed the mental state required for conviction of the substantive offense, an enhanced sentence must be imposed whether or not the defendant fully knew of the circumstances leading to the special offender finding." *Ramirez*, 997 P.2d at 1205.

The legislative history of the special offender provision demonstrates the General Assembly's intent to address punishment rather than defining the elements of an offense. *Vega*, 893 P.2d at 113 ("During discussion of the motion to adopt the amendment, Joseph Mackey, one of its drafters, testified that the special offender provision is 'not a substantive charge' ....."). The General Assembly added this provision to the Controlled Substances Act to allow greater penalties for drug traffickers. *Id.* The legislature accomplished this purpose by listing certain extraordinary aggravating circumstances that subject a defendant to a greater sentence as a special offender. *Id.* at 112; *Ramirez*, 997 P.2d at 1205.

Colorado law requires the fact-finder to enter a special finding in regard to the existence of the special offender circumstance. *Ramirez*, 997 P.2d at 1206 ("Notice is required, trial by jury is not eliminated, and a finding of the existence of the [special offender circumstance] beyond a reasonable doubt is required before a defendant's sentence is increased.")

In this case, the jury was instructed to find the presence or absence of the special offender importation fact only if it found Whitaker guilty of the underlying crime, possession with intent to distribute. Whitaker argues that the jury verdict form violated his due process rights because it did not apply a mens rea to the importation of methamphetamine charge. We disagree. The special offender statute's importation feature does not include a mens rea requirement. We find no error.

We also reject Whitaker's argument that *Apprendi* requires a different result. Here, the fact-finder determined the existence of the special offender fact, importation, beyond a reasonable doubt, in accordance with *Apprendi*. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

### III.

Accordingly, we affirm the judgment of the court of appeals upholding Whitaker's conviction and sentence.

---

7. Section 18–18–407(1)(d) provides: "The defendant unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance (contained in part 2 of this article)."

8. In *Vega*, the special offender statute was section 18–18–107, the precursor to the statute we rule upon today, section 18–18–407.