Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 23, 2019

**2019 CO 78**

**No. 17SC659, *Allman v. People*—Identity Theft—Continuing Offense—Forgery—Concurrent Sentences—Multiple Counts—Sentencing.**

In this case, we first conclude that the crime of identity theft is not a continuing offense. As a result, the trial court did not abuse its discretion in sentencing Allman separately on the eight counts of identity theft. Next, we conclude that none of Allman's convictions for identity theft or forgery were based on identical evidence, so the trial court did not abuse its discretion in sentencing Allman to consecutive sentences on those counts. Finally, we hold that when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others.

Accordingly, we affirm the judgment of the court of appeals in part, reverse in part, and remand with instructions to return the case to the trial court for resentencing consistent with this opinion.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 78

### Supreme Court Case No. 17SC659
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1235

### Petitioner:

Frederick Leroy Allman,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
September 23, 2019

**Attorneys for Petitioner:**
Law Office of Suzan Trinh Almony
Suzan Trinh Almony
   *Broomfield, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
   *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1 Frederick Leroy Allman was convicted of seven counts of identity theft, two counts of forgery, and one count each of attempted identity theft, aggravated motor vehicle theft, and theft from an at-risk elder.[1] He was sentenced to a total of fifteen years in the Department of Corrections ("DOC"), followed by a five-year period of parole. Then, on one of the forgery counts, he was sentenced to ten years of probation to be served consecutively to his DOC sentence, but concurrently with his mandatory parole. Allman appealed his convictions for identity theft[2] and raised several issues regarding his sentencing. The court of appeals affirmed the judgment and sentence, and Allman petitioned this court for review.

¶2 In his petition, Allman contends as follows: (1) identity theft is a continuing offense; (2) because identity theft is a continuing offense, his convictions for the eight identity theft counts should have merged at sentencing; (3) some of his convictions were based on identical evidence and thus require concurrent sentences; and (4) the court could not legally sentence him to both imprisonment and probation for different counts in the same case.[3]

---

[1] "'At-risk elder' means any person who is seventy years of age or older." § 18-6.5-102(3), C.R.S. (2019).

[2] We combine the seven convictions for identity theft with the one conviction for attempted identity theft—and refer to them in total as eight identity theft convictions—for ease of reference because it does not change our analysis.

[3] We granted certiorari to review the following issues:

¶3    We first hold that the crime of identity theft under section 18-5-902(1)(a), C.R.S. (2019), is not a continuing offense.  We therefore conclude that the trial court did not abuse its discretion in sentencing Allman separately on the eight counts of identity theft.  Next, we determine that none of the evidence supporting the identity theft counts and the forgery counts is identical; hence, it was within the trial court's discretion whether to sentence Allman to consecutive sentences on those counts.  Finally, we hold that when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others.[4]  Thus, we affirm the judgment of the court of

---

1. Whether the court of appeals erroneously ruled, as a matter of first impression, that pursuant to section 18-5-902(1)(a), C.R.S. (2013), the crime of identity theft is not a continuing offense, in violation of the petitioner's constitutional right against double jeopardy.

2. Whether the trial court abused its discretion in sentencing the petitioner to eight separate counts of identity theft.

3. Whether the district court erroneously exceeded its authority and/or abused its discretion in sentencing the petitioner to incarceration for one count of forgery and probation for the second count of forgery, to be served consecutively.

4. Whether the district court erroneously exceeded its authority and/or abused its discretion in sentencing the petitioner to multiple counts of identity theft and forgery based on identical evidence.

[4] This appeal does not present, nor do we reach, the question of whether a court may impose sentences to both imprisonment and probation in separate cases.

3

appeals in part, reverse in part, and remand with instructions to return the case to the trial court for resentencing consistent with this opinion.

## I. Facts and Procedural History

¶4 Allman met L.S., a seventy-five-year-old man, through a meet-up group for older people; Allman introduced himself as John Taylor. Some time after meeting L.S., Allman claimed to be having difficulties with his living situation and asked L.S. for a place to stay. L.S. agreed. After Allman had lived with L.S. for five months, L.S. left for a three-week vacation.

¶5 While L.S. was away, Allman used L.S.'s financial information to repeatedly transfer funds out of L.S.'s bank account. Allman also used L.S.'s personal identifying information to open three credit cards and three separate lines of credit. Allman attempted to open a fourth credit card, but the issuing bank denied the application. After making multiple purchases with the credit cards totaling over $45,000, Allman moved out of L.S.'s home, taking a car owned by L.S.

¶6 Allman was charged with multiple crimes arising out of his conduct, and a jury found him guilty of all charges. At sentencing, the trial court imposed consecutive sentences to the DOC for three counts of identity theft (two years each), one count of theft from an at-risk elder (seven years), and one count of aggravated motor vehicle theft (two years), totaling fifteen years in custody of the

4

DOC. The seven-year sentence imposed for theft from an at-risk elder included the maximum period of mandatory parole (five years). The court then imposed two-year sentences for each of the four remaining counts of identity theft and one count of forgery, as well as a one-year sentence for attempted identity theft; these sentences ran concurrently with the combined fifteen-year sentence imposed on the other counts. Finally, the court sentenced Allman to ten years of probation for the second forgery count, to run consecutively to Allman's DOC sentences, but concurrently with Allman's period of parole. The court set restitution in the amount of $59,758.95 as an express condition of Allman's probation.

¶7 Allman appealed, contending, as he does here, that identity theft is a continuing offense; that many of his convictions were based on identical evidence and require concurrent sentences; and that he could not be sentenced to incarceration and probation for different counts in the same case. The court of appeals rejected all of Allman's claims and affirmed his sentences. We granted certiorari and now affirm in part, reverse in part, and remand with instructions to return the case to the trial court for resentencing.

## II. Analysis

¶8 We first determine whether the crime of identity theft, as laid out in section 18-5-902(1)(a), is a continuing offense. We hold that it is not. Next, we address

5

Allman's contentions that his convictions for identity theft, as well as his convictions for forgery and one of his identity theft convictions, should have merged and that his sentences were required to run concurrently. Because identity theft is not a continuing offense, we conclude that the trial court did not abuse its discretion in refusing to merge Allman's convictions for identity theft, and because the relevant identity theft and forgery convictions are not based on identical evidence, we conclude that they did not require concurrent sentences. Finally, we hold that when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others.

## A. Identity Theft Is Not a Continuing Offense

¶9 Allman contends that identity theft is a continuing offense, meaning that his eight separate identity theft charges were actually part of a continuous transaction and are therefore one crime. As such, Allman contends that the identity theft charges should have been merged at sentencing to avoid violating his protection against double jeopardy.

¶10 Determining whether an offense is continuing is a matter of statutory interpretation, which we review de novo. *See People v. Perez*, 2016 CO 12, ¶ 8, 367 P.3d 695, 697.

¶11    "The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused from being placed in jeopardy twice for the same offense," *People v. Williams*, 651 P.2d 899, 902 (Colo. 1982); this includes protection against receiving multiple punishments for the same offense, *id.* (citing *Brown v. Ohio*, 432 U.S. 161, 165–66 (1977)).  When the legislature creates an offense, that offense is deemed committed once all the substantive elements set forth by the legislature are satisfied.  *See People v. Thoro Prods. Co.*, 70 P.3d 1188, 1192 (Colo. 2003).  "However, in certain circumstances, a crime continues beyond the first moment when all its substantive elements are satisfied," and it is deemed a continuing offense.  *Id.*  If a "series of repeated acts . . . are charged as separate crimes even though they are part of a continuous transaction and therefore actually one crime," *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005), those convictions must be merged at sentencing to avoid violating the U.S. and Colorado Constitutions' Double Jeopardy Clauses.  Thus, to determine whether a defendant's protection against double jeopardy has been violated "[i]n these situations, the inquiry is whether the [legislature] has defined the crime as a continuous course of conduct."  *Id.* at 214–15.

¶12    A crime is deemed continuous when "the explicit language of the substantive criminal statute compels such a conclusion."  *Toussie v. United States*,

397 U.S. 112, 115 (1970). For example, when defining conspiracy, the legislature explicitly stated that "[c]onspiracy is a continuing course of conduct." § 18-2-204(1), C.R.S. (2019). If the explicit language of the statute does not compel such a conclusion, a crime is deemed continuous if "the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115. In this analysis, we construe the statute to give effect to the legislature's intent.

¶13     When construing a statute to give effect to the legislature's intent, we first look to the statute's text and "apply the plain and ordinary meaning of the provision." *Perfect Place, LLC v. Semler*, 2018 CO 74, ¶ 40, 426 P.3d 325, 332. In doing so, we consider "the statute as a whole, construing each provision consistently and in harmony with the overall statutory design." *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002).

¶14     The statute at issue here is section 18-5-902(1)(a). It prohibits a person from knowingly using another's personal or financial information, without permission, and with the intent to obtain something of value:

> A person commits identity theft if he or she . . . [k]nowingly uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority

with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment . . . . [5]

§ 18-5-902(1)(a). Unlike statutes that explicitly define the crime as "a continuing course of conduct," the identity theft statute contains no language that explicitly defines identity theft as a continuing offense. Thus, we must look to the alternative test to determine whether, based on the nature of the crime, the legislature nevertheless assuredly intended that identity theft be treated as a continuing offense. *See Toussie*, 397 U.S. at 115.

¶15    To make this determination, we first look to the plain language of the statute. Under section 18-5-902(1)(a), a person commits identity theft when he "[k]nowingly uses the personal identifying information, financial identifying information, or financial device of another without permission," with the intent to gain something of value. Thus, the thrust of the question before us is whether the verb "uses" connotes a discrete act or a continuous act. Because the statute does not specifically define the word "uses," we look to the plain and ordinary meaning of the word, aided by the dictionary definition. *See People v. Forgey*, 770 P.2d 781,

---

[5] This is a different and distinct offense from identity theft by possession, which is defined in a separate subsection of the statute, § 18-5-902(1)(b), and requires *possession* of another's identifying information with the intent to use it.

783 (Colo. 1989) ("We have frequently looked to the dictionary for assistance in determining the plain and ordinary meaning of words.").

¶16    We first turn to the plain and ordinary meaning of the word "use." *Webster's Third New International Dictionary* defines "use" as "to put into action or service." *Use*, Webster's Third New International Dictionary (2002). *Webster's* goes on to state that "use is general and indicates any putting to service of a thing, usu[ally] for an intended or fit purpose." *Id.* *Black's Law Dictionary* similarly defines "use" as "to employ for the accomplishment of a purpose; to avail oneself of." *Use*, Black's Law Dictionary (11th ed. 2019). Therefore, the word "uses" has two definitional components: (1) putting something into action or service (2) to achieve a purpose.

¶17    Allman asserts that the object of the verb "uses" is the victim's identity itself, meaning that a person's "use" of another's identity is necessarily continuing because a person's identity can only be stolen once. We are not persuaded. While the title of the statute, "Identity theft," suggests that the crime it defines is the theft of a person's identity, a closer reading of the statute reveals otherwise. As the court of appeals correctly noted, the object of the verb "uses" is "the personal identifying information, financial identifying information, or financial device of another." § 18-5-902(1)(a); *People v. Allman*, 2017 COA 108, ¶ 17, __ P.3d __. Each

10

of these is a piece of information that can *authenticate* one's identity; none of them is one's identity itself, as Allman argues. Thus, the crime of identity theft is not stealing another's identity; rather, it is stealing something *else* of value through the impermissible use of another's identifying information.

¶18 A person, therefore, "uses" another's identifying information whenever he puts that information into service to achieve a purpose, namely, "to obtain cash, credit, property, services, or any other thing of value or to make a financial payment." § 18-5-902(1)(a). Accordingly, each act of putting another's information into service for varying purposes constitutes a separate, discrete act. This conclusion is supported by the fact that each time an identity thief uses another's information, a new harm occurs. Here, for example, Allman used L.S.'s identity to open multiple extensions of credit. Each extension of credit harmed not only L.S. but also the financial institution issuing the extension of credit.

¶19 Moreover, looking at the identity theft statute as a whole supports this conclusion. *See Whitaker*, 48 P.3d at 558 ("We must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible."). Identity theft by use is at issue here, but the statute also provides for identity theft by possession. Identity theft by possession, as defined in section 18-5-902(1)(b), is defined similarly to identity theft by use, as defined in

section 18-5-902(1)(a), except that it requires only the *possession* of another's identifying or financial information with the intent to use, rather than the actual *use* of that information.[6]  *Id.*  Crimes of possession are generally thought to be continuing offenses.  *People v. Zuniga*, 80 P.3d 965, 969 (Colo. App. 2003).  This makes sense because there is not an inherently logical way to measure possession in units—whereas "use" is a discrete act that logically creates a unit of measurement, possession is a continuous act.  Consistent with that logic, the legislature created one continuing class 4 felony for the possession of another's identifying information and separate, discrete class 4 felonies for each time that information is used.  Thus, the legislature did not assuredly intend for identity theft by use to be a continuing offense.  *See Toussie*, 397 U.S. at 115.

¶20     Accordingly, we hold that identity theft by use under section 18-5-902(1)(a) is not a continuing offense.  Further, because we have concluded that identity theft is not a continuing offense, the trial court was not required to merge Allman's

---

[6] Section 18-5-902(1)(b) states that a person commits identity theft when he or she:

> [k]nowingly possesses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority, with the intent to use or to aid or permit some other person to use such information or device to obtain cash, credit, property, services, or any other thing of value or to make a financial payment.

12

identity theft convictions. Therefore, the trial court did not abuse its discretion in sentencing Allman separately for each count of identity theft.

## B. Concurrent Sentencing Was Not Required

¶21 Allman contends that his sentences for his eight separate identity theft convictions are required to run concurrently because they are based on identical evidence and thus violate his right against double jeopardy.

¶22 The sentencing court generally has broad discretion when imposing sentences, and "[w]hen a defendant is convicted of multiple offenses, the sentencing court has the discretion to impose either concurrent or consecutive sentences." *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007); *see also Misenhelter v. People*, 234 P.3d 657, 660 (Colo. 2010). But when those multiple convictions are based on identical evidence, the court must impose concurrent sentences. § 18-1-408(2)–(3), C.R.S. (2019) (requiring concurrent sentences for offenses "based on the same act or series of acts arising from the same criminal episode" that "are supported by identical evidence").

¶23 In construing section 18-1-408(3), "we have consistently analyzed 'identical evidence' by considering whether the acts underlying the convictions were sufficiently separate." *Juhl*, 172 P.3d at 902. "[W]hether the evidence supporting the offenses is identical turns on whether the charges result from the same act, so

13

that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." *Id.*

¶24 As stated above, each count of identity theft was based on a separate, discrete act of identity theft; specifically, each count was based on Allman's use of L.S.'s information to open a different credit card or line of credit.[7] The evidence supporting each of these counts necessarily differs based on the various cards and accounts that Allman opened, used, or attempted to use or open:

- Count 2: transferred funds out of L.S.'s Wells Fargo bank account
- Count 4: opened a new Citibank Visa credit card
- Count 5: opened a new Citibank dividend platinum line of credit
- Count 6: opened a Bill Me Later line of credit
- Count 7: opened a First National Bank line of credit
- Count 8: opened an American Express Business Gold credit card
- Count 9: attempted to open a Bank of America Business credit card
- Count 10: opened an American Express credit card

¶25 In sum, each of these counts is supported by evidence unique to the specific credit card or line of credit that was opened. Therefore, Allman's eight identity theft convictions are not supported by identical evidence.

---

[7] Allman ultimately succeeded in opening three credit cards and three lines of credit; his final attempt to open a credit card was denied by the issuing bank.

14

¶26 Allman similarly argues that his sentences for forgery should run concurrently with each other and with his sentence for one of the identity theft convictions because they are based on his use of a single Citibank card, which he obtained by an act of identity theft. But that position also ignores the fact that the evidence supporting his forgery convictions was not identical. The first forgery count stemmed from Allman's use of the Citibank card at a liquor store, while the second forgery count stemmed from Allman's use of the Citibank card at a Target. Proving those two counts required receipts signed by Allman from each business. As a result, the two forgery counts were not based on identical evidence.

¶27 Moreover, the evidence supporting the forgery convictions was not identical to the evidence supporting the identity theft conviction related to the Citibank card. Unlike the identity theft statute, the forgery statute requires a person to falsely make, complete, alter, or utter a written instrument that evidences a legal right, i.e., falsely signing a credit card slip. *Compare* § 18-5-102(1)(c), C.R.S. (2019), *with* § 18-5-902(1)(a). In simple terms, Allman committed identity theft when he used L.S.'s identity to obtain the Citibank card. He committed forgery each time he signed L.S.'s name on each credit card receipt. Those are all different acts. Therefore, they are not supported by identical evidence. As a result, the trial court was not statutorily required to run Allman's

15

sentences for the forgery convictions and the identity theft conviction related to the Citibank card concurrently and did not abuse its discretion in declining to do so.

## C. Imprisonment and Probation

¶28     The final issue Allman raises is whether a court can sentence a defendant to both imprisonment and probation in a multi-count case. The court's power to sentence, both to prison and probation, derives entirely from statute. The legislature establishes the range of prison sentences and the circumstances where probation is authorized, including the length of any incarceration as a condition of probation. Because the probation statute does not grant the courts the power to impose sentences to both imprisonment and probation in a multi-count case, we hold that when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and probation for others.

### 1.  Standard of Review

¶29     Whether a trial court has the authority to impose a specific sentence is a question of statutory interpretation, which we review de novo. *Hunsaker v. People*, 2015 CO 46, ¶ 11, 351 P.3d 388, 391.

### 2.  Law and Application

¶30     Prescribing punishments is the prerogative of the legislature. *Vensor v. People*, 151 P.3d 1274, 1275 (Colo. 2007). "Courts therefore exercise discretion in

16

sentencing only to the extent permitted by statute." *Id.* Without statutory authority to impose probation, the court has no inherent powers to impose such a sentence. Thus, the question is not whether the statute *disallows* imposing sentences both to imprisonment and probation, but whether the statute *allows* it.

¶31 When undertaking statutory interpretation, "statutes should be construed to effectuate the General Assembly's intent and the beneficial purpose of the legislative measure." *In re Estate of Royal*, 826 P.2d 1236, 1238 (Colo. 1992). "Even in the face of statutory silence, questions of interpretation are governed by legislative intent." *LaFond v. Sweeney*, 2015 CO 3, ¶ 12, 343 P.3d 939, 943. In those situations, we determine the legislature's intent by looking to, among other things, the plain language of the statute as a whole and the practical consequences of a particular interpretation. *See* § 2-4-203, C.R.S. (2019) (listing different aids to be used in statutory construction).

¶32 The probation statute itself is silent as to the propriety of sentencing a defendant to both imprisonment and probation in a multi-count case. Thus, we must determine whether the legislature intended to allow such a sentence by looking to the plain language of the probation scheme as a whole and the practical consequences of imposing sentences to both imprisonment and probation. We conclude that it did not.

17

¶33 First, the plain language of the probation statute leads us to conclude that a court may not impose sentences to both imprisonment and probation for multiple offenses in the same case. To start, the determination that probation is an appropriate sentence for a defendant necessarily requires a concordant determination that imprisonment is *not* appropriate. The court has discretion to grant a defendant probation "unless, having regard to the nature and circumstances of the offense and to the history and character of the defendant," it determines that "imprisonment is the more appropriate sentence for the protection of the public." § 18-1.3-203(1), C.R.S. (2019). The probation statute lists numerous factors that, "while not controlling the discretion of the court, shall be accorded weight" when determining whether probation is appropriate. § 18-1.3-203(2). These factors are comprehensive. Some concentrate on the offense committed, while others require the court to consider the character, history, situation, and attitude of the defendant himself. *Id.*

¶34 The probation statute gives courts guidance and discretion in choosing to grant probation. However, it requires a choice between prison and probation. The court must look at both the defendant and the crimes committed and, using its discretion and the statutory guidance, choose whether "the ends of justice and the best interest of the public, as well as the defendant" will be best served by

18

probation, § 18-1.3-202(1)(a), C.R.S. (2019), or whether "imprisonment is the more appropriate sentence for the protection of the public," § 18-1.3-203(1). The legislature intended to allow courts to choose only one or the other. Probation is an alternative to prison.

¶35 The People assert that, in a situation where the court feels that it is in the best interest of the public and of the defendant for the defendant to be incarcerated, but the court wishes to give a longer period of rehabilitation than the prescribed mandatory parole period, the court should have the option to impose a period of post-incarceration probation longer than that of parole. There is logic in this argument; in fact, it appears that the trial court here wanted Allman supervised for a long period of time due to the restitution owed. Nevertheless, allowing a trial court to in effect increase the time of post-incarceration supervision ignores the fact that the legislature determined the proper length of time for a defendant's post-incarceration supervision when it crafted mandatory periods of parole.[8] It did not leave that decision to the courts.

---

[8] While we understand the court's desire to have Allman supervised for an extended period of time to ensure he pays his restitution, the sentencing statutes simply do not provide for this. The legislature has already provided methods for victims to receive their restitution. *See, e.g.*, § 16-18.5-107, C.R.S. (2019) (providing for victims to pursue collections for restitution payments).

¶36 The People further assert that because the probation statute is offense specific, the parole period would apply to one offense and the probationary period would apply to a separate offense, thus not violating the legislatively mandated rehabilitation period. However, this argument disregards the structure of the parole scheme as established by the legislature. As mandated by statute, when a defendant is sentenced to imprisonment in a multi-count case, the period of parole is tied to the most serious crime for which the defendant is sentenced. *See* § 18-1.3-401(1)(a)(V)(E), C.R.S. (2019). In other words, regardless of the number of counts in a multi-count case, a defendant is only subject to one period of parole. Thus, the legislature intended the rehabilitative period for a defendant to be case specific, not offense specific.

¶37 To be sure, the legislature gives the court significant discretion to determine the terms and conditions of probation. But that discretion has limits. Applicable here, the legislature has determined the length of confinement that a court can order as a condition of probation. Specifically, the court has the power to commit a defendant to jail as a condition of probation, but the aggregate length of any commitment may not exceed ninety days, or up to two years with work release. *See* § 18-1.3-202(1); § 18-1.3-207(1), C.R.S. (2019). This is clear direction that the legislature never intended for the court to have discretion to impose a period of

20

confinement longer than ninety days (or up to two years with work release) when also sentencing a defendant to probation. If the court could impose a prison sentence and then probation, then these limits on incarceration as a condition of probation would be rendered meaningless in multi-count cases.

¶38 Furthermore, in the same section granting probationary powers to the court, the legislature mandated that "[i]f the court chooses to grant the defendant probation, the order placing the defendant on probation *shall* take effect upon entry." § 18-1.3-202(1)(a) (emphasis added). The legislature's use of the mandatory term "shall" means that it intended for a sentence to probation to begin immediately; hence, the legislature did not intend for courts to enter an order granting probation to run consecutively to a sentence of imprisonment. Thus, the statutory scheme does not allow a court to impose sentences of imprisonment and probation for different counts in the same case.

¶39 Second, the fact that the legislature did not intend to allow a court to sentence a defendant to both probation and imprisonment is further evidenced by the practical consequences of such sentencing. When a defendant is sentenced to imprisonment and subsequently released on parole, that defendant is under the supervision of the executive branch. However, when a defendant is sentenced to probation, that defendant is under the supervision of the judicial branch. Thus, a

21

defendant who is serving both parole and probation would be under the supervision of not just two different supervisors, but two entirely different branches of government, possibly with competing terms and conditions for both. The legislature could not have intended for defendants to be simultaneously subject to two separate branches of government during their post-incarceration supervision.

¶40 For the reasons listed above, we hold that when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others.[9]

### III. Conclusion

¶41 We affirm the judgment in part, reverse in part, and remand with instructions to return the case to the trial court for resentencing.

---

[9] Because we determine that the statutory scheme does not allow a court to impose imprisonment for some counts and probation for others, we need not address whether doing so raises separation of powers concerns or whether Allman consented to his probationary sentence.