THE NEVADA STATE BOARD OF PHARMACY, Con-
sisting of N. E. BROADBENT, MURDELL EARL,
JOSEPH McBEATH, LONNIE TRUELL and WIL-
LIAM LOCKE, Appellant, v. ERNEST D. GARRI-
GUS and ARDWIN J. BLOCK, Respondents.

No. 6713

May 2, 1972                            496 P.2d 748

*Robert List,* Attorney General, and *Robert A. Groves,* Dep-
uty Attorney General, Carson City, for Appellant.

*Harry E. Claiborne* and *Annette R. Quintana,* of Las Vegas,
for Respondents.

*Cooke & Roberts,* of Reno, and *Sidney H. Willig,* of Phila-
delphia, Pennsylvania, Amici Curiae.

## OPINION

By the Court, ZENOFF, C. J.:

Block and Garrigus were charged by the Nevada State Board of Pharmacy with furnishing excessive quantities of narcotic drugs to a certain Larry Chapman and that by so doing they were guilty of unprofessional conduct for which their licenses as pharmacists were revoked by the board. On review the trial court reversed the board's judgment from which the Board of Pharmacy now appeals.

An investigation by the Clark County District Attorney revealed that substantial quantities of numorphan were dispensed on prescription of a Dr. Hulse by the two respondents who were employed as pharmacists at a large Las Vegas market center called Wonder World South. Numorphan is a synthetic drug and is addictive. It is used primarily to alleviate pain.

Between the period of April 6, 1970 and August 22, 1970 Block sold to Chapman (the name is an alias) a total of 5,800 tablets on 33 separate occasions. At all times a proper prescription from Hulse was provided and on several instances, almost from the first, both Block and Garrigus checked with the prescribing physician to verify the legitimacy of the prescriptions. Garrigus dispensed 3,450 of the numorphan tablets on 19 occasions. Block also sold to Chapman 580 hypodermic syringes between June and August of 1970.

Despite the uncontroverted testimony of Block and Garrigus that they had verified the prescriptions with Hulse's office and had been told that Chapman was suffering from terminal cancer, hence the large dosage, their licenses were revoked.

NRS 639.255(2) provides that the action of the Board of Pharmacy shall be final except that the propriety of its disciplinary action is subject to review upon questions of law by a court of competent jurisdiction. The question becomes, what is the question of law that gives rise to this court's review?

NRS 639.210(1)(d) allows the state board to suspend or revoke the license of any pharmacist who is guilty of "unprofessional conduct or conduct contrary to the public interest. . . ." In its rules the board did not define what amounts of drugs are

medically or pharmaceutically excessive. At the hearing before the board there was no evidence or testimony produced that established what the standard was that constituted conduct that became unprofessional if breached. Unlike Moore v. Board of Trustees, 88 Nev. 207, 495 P.2d 605 (1972), an ungloved doctor fingering a hypodermic needle just before it was to be inserted into a patient's body was ipso facto unprofessional for the act in such circumstances speaks for itself, but such blatancy does not exist here. See also Nevada State Board of Chiropractic Examiners v. Babtkis, 83 Nev. 385, 432 P.2d 498 (1967). Narcotics in proper doses are commonly prescribed.

The accused pharmacists have a right to know what they have violated. There is no evidence in the record that the amount of drugs sold to Chapman was excessive under the circumstances, no proof was elicited as to what does or does not constitute unprofessional conduct in the pharmacy business, and no evidence was presented as to what were the contemporary standards in the profession. Under what circumstances should a pharmacist set up his judgment against that of a licensed physician? It would be a dangerous principle to establish that a druggist cannot safely fill a prescription merely because it is out of the ordinary. If that were done, many patients might die from being denied unusual remedies in extreme cases. People's Service Drug Stores v. Somerville, 158 A. 12 (Md.App. 1932). While that was an action for damages against a pharmacy for filling a prescription calling for a large dose of strychnine the Maryland court stressed the absence of any witness to establish exactly what would have required a pharmacist to decline to fill the prescription.

The profession of medicine calls for different requisites than the profession of pharmacy and it is not for the pharmacist to second guess a licensed physician unless in such circumstances that would be obviously fatal. The court in Somerville, supra, formulated the test to be that where the doses prescribed were unusual inquiry of the physician should be made to ascertain that there has been no error. Block and Garrigus did so inquire several times. They discharged their duty.

We are furnished nothing in this record to tell this court what in the pharmaceutical profession constitutes unprofessional conduct. The fact that the respected members of the board felt respondents' conduct improper is not enough to provide their hearing with requisite due process. That Chapman was a cheat and an addict and was using several names and addresses to

acquire all of the drugs that he could get was unknown to petitioners and no circumstances are shown that Block and Garrigus should have known of it, or even if they did, that their conduct breached any established standard for the record does not show that a guideline standard exists.

Affirmed.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.