ELKO ENTERPRISES, INC., a Nevada Corporation, dba COMMERCIAL HOTEL, Appellant, *v.* ROGER WADE BROYLES, a Minor, Through His Guardians, SCOTT ANTHONY ROGERS, and CYNTHIA MARIE ROGERS, Respondents.

No. 19027

September 28, 1989                                   779 P.2d 961

*Perry, Hebert & Spann,* Reno; *Wilson & Barrows,* Elko, for Appellant.

*James E. Wilson, Jr.,* Carson City, for Respondents.

# OPINION

*Per Curiam:*

This is a wrongful death case in which a jury awarded respondent Roger Wade Broyles a substantial verdict for the death of his father, Roger Dean Broyles. Roger's father was murdered in the Commercial Hotel in Elko by one Merrill Wolford.

To be reviewed in this appeal is whether the murder of Roger's father in the Commercial Hotel bar can give rise to legal tort liability on the part of Elko Enterprises, Inc., the owner and operator of the hotel. To answer this question we must inquire at some depth into the facts surrounding the murder.

On Friday evening, October 25, 1985, Roger's father was in the Commercial Hotel bar in the company of a woman named Laverne Hunt. Hunt is the former wife of Merrill Wolford, the man who killed Roger's father. Approximately five months earlier, Hunt and Wolford had been divorced. Wolford had continued to live in a trailer with Hunt up until ten days before the shooting. Wolford and Broyles had previously been good friends. Wolford believed that Broyles and Hunt were maintaining a sexual relationship.

In the two to three months before the shooting, Wolford had lost control of his drinking. He was getting drunk every night. Broyles, Hunt and Wolford were all regulars at the Commercial Hotel bar and were known to the employees there. The bartenders and the waitress were aware of Wolford and Hunt's divorce.

On the Friday night before the killing Wolford sat down at the end of the bar that Mike Hale (Hale) was tending. At the other end of the bar sat Hunt and Broyles. Hale saw Wolford looking at the couple and commented, "It's alot like gettin' kicked right in the gut, ain't it Merrill." Wolford got up and talked to another customer for a short while and then returned to the bar. As he sat down, Hunt and Broyles were preparing to leave. Hale asked Wolford, "[Y]ou feel any better now Merrill?" Wolford replied, "[T]hat's OK Mike . . . I'll kill'em both . . . I'm gonna shoot'em both." Wolford indicated to Hale that he had a gun in his vest pocket; however, Hale did not actually see the gun. Hale stated that the whole time that Wolford was in the bar he did not take his right hand out of his pocket. Wolford paid for his drink with his left hand.

As Wolford got up to leave, Hale was "kinda shocked" because he knew that Broyles and Hunt were right there and "he'd just showed me [the gun]." Hale asked Wolford, "Merrill . . . did I just hear what I—what I thought I heard?" Hale stated that Wolford replied, "I didn't say anything." Then Wolford got

up from the bar. Hale said, "Merrill, you're a good dude . . . you got alot goin' for yah." By that time Broyles and Hunt were out of the bar. Wolford looked around a little, then soon left the bar without finishing his drink.

Hale told the waitress on duty, Donna Cooper (Cooper), about his conversation with Wolford. About half an hour later, Wolford returned to the bar. Cooper, in a playful manner, patted Wolford down, and a "shocked look" came across Cooper's face, and she said, "Whooa!" Cooper confirmed that she did feel a gun in Wolford's pocket. Nothing else of consequence happened at the bar that Friday evening.

The next evening, Saturday, October 26, 1985, Wolford again went to the bar at the Commercial Hotel. He was not wearing his vest. He was looking for Hunt to invite her to a Halloween party. Wolford sat down at the bar and ordered a drink from Hale. According to Hale, Wolford reached over the bar and said, "Bang, I got yah!" to Hale. The two conversed for a while, and Hale bought Wolford a beer. Wolford left after fifteen or twenty minutes without finishing his drinks.

Later that evening, at about 8:15, Wolford returned to the bar at the Commercial Hotel. Wolford was wearing his vest and had his hand in his pocket. Hunt and Broyles were sitting at the end of the bar. Hale saw Wolford come through the door and thought, "Now he probably doesn't have it with him, you know, wow, sh--, does he have it, should I—what should I do? No, he probably doesn't have it with him, . . . maybe he'll have to go to his truck or home to get it."

According to Hale, Wolford came "through the door and just kept walking, just walked all the way around and didn't say a word to anybody, he bumped through people, he hit Leonard pretty hard, there's a real narrow space right there where people walk, he didn't even slow down, not a bit, he just run into people and walked right up to [Broyles and Hunt] and didn't say a word, just started shooting." When Hale heard the gunfire, Hale "just went right down on the ground." However, when the gunfire continued, Hale ran out the door to a nearby establishment and told the people there to call an ambulance.

The assailant, Wolford, gave a different account from that of Hale's. According to Wolford's deposition he went into the bar in order to invite his former wife, Laverne, to a Halloween party. Upon seeing Laverne sitting at the bar with the now deceased Roger Broyles, he avoided them and went unseen to the men's room. Upon coming out of the men's room, Wolford testified that he observed Laverne and Broyles in an embrace. This caused Wolford to go into some kind of altered state of consciousness.

According to Wolford, "[e]verything just went kind of red and black. And then it was—I was watching everything." After the shooting Wolford remembers that he went "back inside" of his body. He testified that he had no intention to kill Broyles, but that he "flipped out" and was "crazier than Hell."

If we were to patch together a version most favorable to plaintiff—respondent's position—the killing could have taken place as follows. On Friday night Wolford openly expressed his intention to Commercial Bar personnel to shoot Broyles and Laverne. He had a gun. None of the Bar personnel who were concerned about the threats did anything to protect their patron Broyles from the death threat. They did not notify company security or the police. They did not even favor Broyles with a warning. That Wolford might shoot Broyles on Friday appears to be foreseeable under these circumstances, but, Laverne and Broyles left the premises before Wolford carried out his threat.

On the next night, Saturday night, Wolford entered the bar knowing that Roger and Laverne would probably be there during the evening. Both the bartender, Mike Hale, and the waitress, Donna Cooper, knew or believed that Wolford was armed.

Hale was concerned because Wolford had his vest on (where he kept his gun). He knew that Laverne and Broyles were in the bar and wondered "what should I do." At least one bar employee saw Wolford go into the bathroom, and it is certainly arguable that at this time someone of those who knew of the dangerous situation had time to notify security or at least warn Broyles of the fact that he was being stalked on the premises by a dangerous and armed man who had made open threats that he was going to shoot Broyles and Laverne.

Elko Enterprises argues that as a matter of law they had no duty to protect Broyles from being shot by Wolford, explaining in its brief that it is the courts' duty "to determine whether upon facts and evidence which the jury may reasonably find to be true, the law imposes upon the defendant any legal duty to act . . . for the protection of the plaintiff." As stated, the jury could reasonably have found in this case that Commercial Bar personnel knew that Wolford had expressed directly and indirectly his intention to kill Broyles, that Wolford had a gun in his possession, that there was more than adequate time within which to take some protective action even if it were only warning Broyles and Laverne of the threats.

It was Elko Enterprises's duty as proprietor of the premises to use reasonable care to keep the premises safe for its patrons. Early v. N.L.V. Casino Corp., 100 Nev. 200, 678 P.2d 683

(1984). In El Dorado Hotel v. Brown, 100 Nev. 622, 627, 691 P.2d 436, 440 (1984), we noted that a business "proprietor has the duty to control the wrongful acts of third persons where he has reasonable cause to anticipate the act and the probability of injury." Not only were Wolford's actions foreseeable under an interpretation of the evidence that is most favorable to respondent, Wolford's attack upon Broyles appears to have been actually *foreseen* by and a matter of considerable concern to the employees of Elko Enterprises. The trial judge in this case, in ruling on the motion for directed verdict, commented that "all issues of foreseeability are not issues of law, and that some are indeed issues of fact." We agree. Whether agents of Elko Enterprises had reasonable cause under the facts of this case to "anticipate the act," that is, to anticipate that Wolford would shoot Broyles is, as ruled by the trial court, "a jury question." If Commercial Bar employees did or reasonably should have anticipated Wolford's acts, then there was an affirmative duty to warn Broyles and Laverne or protect them from the hazard posed by Wolford's presence on the premises; and the jury found that the duty was breached by Elko Enterprises. We will not set aside this jury determination, and we affirm the trial court's refusal to do so.

Elko also claims that the trial court erred in giving the following instruction:

> If you find that defendant was negligent and that their [sic] negligence was a substantial factor in bringing about an injury to the plaintiff but that the immediate cause of the injury was the conduct of a third person, the defendant is not relieved of liability for such injury if at the time of their [sic] conduct the defendant's employees realized that a third person might act as he did where the risk of harm suffered was reasonably foreseeable.

Jury Instruction No. 29.

The statement of law given is taken from Nevada Jury Instructions 4.06 and from BAJI 3.79. The instruction tells the jury that a defendant can be found negligent even if the injury was caused by a third person, provided that the third person's conduct was reasonably foreseeable. This is a correct statement of the law and is not inconsistent, as contended by Elko Enterprises, with our holding in *El Dorado*.

The judgment of the trial court is affirmed.