DIANNA CRIPPENS, APPELLANT, *v.* SAV ON DRUG STORES, A DELAWARE CORPORATION, RESPONDENT.

No. 27735

July 28, 1998                                             961 P.2d 761

---

*Crockett & Myers* and *Laura E. Stubberud,* Las Vegas, for Appellant.

*Joel F. Hansen & Associates* and *Bradley M. Ballard,* Las Vegas, for Respondent.

# OPINION

By the Court, SHEARING, J.:

The trial court granted summary judgment to Sav On Drug Stores, dismissing appellant Dianna Crippens' action for negligent infliction of emotional distress. Ms. Crippens' claim was based upon her having witnessed the adverse effects upon her mother resulting from the administration of prescription medication that had been negligently dispensed by Sav On. Ms. Crippens, who had been providing care to her mother, obtained the medication for her mother, the druggist had filled the prescription with the

wrong drug which turned out to be highly toxic, and Ms. Crippens observed her mother become incoherent, eventually experience hypoglycemic shock and become permanently disabled. We reverse the summary judgment in favor of Sav On and conclude that this matter should proceed to trial.

## DISCUSSION

This case is governed by State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985). *Eaton* requires that a bystander plaintiff be closely related to the victim of an accident, be located near the scene of the accident, and suffer a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident. *Id.* at 716, 710 P.2d at 1377-78.

The majority of the cases on negligent infliction of emotional distress have involved automobile accidents, including *Eaton*. Thus, some of the language of these cases cannot appropriately be applied to the negligence of a pharmacist dispensing drugs. In addition to debating whether a plaintiff is a bystander or what the plaintiff actually observed, we should look to the basic principles underlying the tort of negligent infliction of emotional distress.

In *Eaton,* this court discussed some of the history of the tort of negligent infliction of emotional distress due to injury to another. This court embraced the ruling in Dillon v. Legg, 441 P.2d 912 (Cal. 1968) by saying:

> [T]he *[Dillon]* court held that liability could be circumscribed in these cases, as in all tort cases, by the application of the general principles of negligence. 441 P.2d at 924. The trial courts could determine whether the accident and the harm to the bystander was reasonably foreseeable and "thus mark out areas of liability, excluding the remote and unexpected." 441 P.2d at 921. We agree with the reasoning of the California court. We "see no good reason why the general rules of tort law, including the concepts of negligence, proximate cause, and foreseeability, long applied to all other types of injury, should not govern the case now before us." 441 P.2d at 924. . . . *See also* II Harper and James § 18.4, p. 1039 ("mechanical rules of thumb which are at variance with these [general] principles [of tort law] do more harm than good.").

*Eaton,* 101 Nev. at 713, 710 P.2d at 1376.

Under this reasoning, it is not the precise position of plaintiff or what the plaintiff saw that must be examined. The overall cir-

cumstances must be examined to determine whether the harm to the plaintiff was reasonably foreseeable. Foreseeability is the cornerstone of this court's test for negligent infliction of emotional distress. *Id.* at 715.

In this case, a daughter purchased prescription medication for her mother. The daughter then initiated and continued administration until her mother was rendered comatose. In effect, because of the pharmacist's negligence, the daughter poisoned her mother. Under these facts, it was entirely foreseeable that the drug would significantly harm the actual patient and that a close relative would continue administration until the ultimate catastrophic effect was realized.

Of course, the plaintiff still faces the burden of proving her damages were proximately caused by the pharmacist's negligence. The jury should be allowed to make the determination of whether Crippens' claim is meritorious.[1]

Accordingly, we reverse the judgment of the district court and remand for further proceedings.

ROSE and MAUPIN, JJ., concur.

SPRINGER, C. J., dissenting:

I do not see a daughter's witnessing the slowly-emerging, not accidental effects of wrongly-prescribed medication as being the subject matter of a negligently-inflicted emotional distress tort action; so I dissent. There is not present here the required "contemporaneous observance" of an "accident." The plaintiff cannot properly be described as a "bystander," nor can it be said that she suffered a "shock" which resulted from a "direct emotional impact."

The questions presented by this case are: (1) whether Ms.

---

[1]We have considered and rejected Ms. Crippens' claim that she is entitled to recover under NRS 639.266. This statute merely requires that pharmacists "communicate" certain data relating to use and proper administration of dispensed drugs. The law is quite clearly intended for the protection of the users of drugs and does not relate directly or indirectly to other persons who might observe the adverse effects of a negligently-dispensed drug. Ms. Crippens' claim for emotional distress does not relate to the manner in which the drug was administered but, rather, to the negligent dispensing of the *wrong* drug. Even if Sav On had dispensed the right drug with the wrong instructions, NRS 639.266 would not apply to Ms. Crippens' claim, although it might have some applicability to the user of the drug. It is clear that a statute which regulates the "communication" of information concerning administration of drugs does not create a duty running from Sav On to Ms. Crippens with respect to her observation of the effects of a drug that had not even been prescribed.

Crippens can be said to have been a *bystander* who was located near the scene of an "accident"; (2) whether the suffering sustained by Ms. Crippens' mother can be said to have resulted from an *accident;* (3) whether Ms. Crippens can be said to have suffered *shock* resulting from a *direct* emotional impact brought about by her observing an *accident.* The most important of these words in deciding the present case is the word "accident."[1] *See* State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985).

Although it is probably safe to say that none of the elements of this tort (other than the close relationship of the mother and daughter) can be said to be present here, it is inescapably clear in this case that the negligently-treated mother was not the victim of an "accident." We should keep in mind that most of these kinds of cases truly do involve an "accident," cases, for example, in which mothers witness serious injuries being inflicted on their children, thus suffering a "direct emotional impact" and "shock" in the "observance" of the accident. This pattern does not fit the case now before us at all.

I will focus in this dissent on the missing element "accident."

[1]Although the majority correctly states that this case is governed by *Eaton,* and recites the standard requirements for a negligent infliction of emotional distress claim as set forth in *Eaton,* the majority curiously fails to apply those standard requirements to the instant case. Instead, the majority addresses only foreseeability and proximate cause which, of course, are the "cornerstone" issues of a negligence claim. If these issues were alone dispositive of claims for negligent infliction of emotional distress, the cause of action would never have developed, as it would have the same elements as ordinary negligence. Negligent infliction of emotional distress is a "discrete tort cause of action," rather than simply an expansion of the damages upon which an ordinary negligence claim may be predicated. Thing v. La Chusa, 771 P.2d 814, 817 (Cal. 1989).

Allowing those who are emotionally impacted by the physical injuries of others to recover for their emotional distress under ordinary negligence principles alone would encourage an unwarranted proliferation of this special kind of tort litigation. The California Supreme Court, which developed the requirements adopted in *Eaton* in the landmark case of Dillon v. Legg, 441 P.2d 912 (Cal. 1968), has subsequently commented on "the importance ofavoiding the limitless exposure to liability that the pure foreseeability test of 'duty' would create." *Thing,* 771 P.2d at 821. The court concluded:

> [R]eliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liabiltiy out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

*Id.* at 826-27; *see also* John L. Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries,* 35 Hastings L. J. 477 (1984). The limitations on recovery recited in *Dillon* and discussed in *Thing* have already been adopted by Nevada in *Eaton* and, I suggest, should be properly and faithfully applied in the present case.

We have in Nevada's industrial compensation law a definition of "accident" that would seem to fit our purposes in this case. NRS 616A.030 tells us that an "'[a]ccident' means an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." It is rather clear that there was no "accident" here, that Ms. Crippens did not observe an accident and that she did not suffer a "shock" from observing an accident.

It cannot be argued, under the definition of *accident* taken from Chapter 616A, that the mother's progressive mental deterioration can be called an "accident." Certainly, the mother's failing condition did not occur "suddenly and violently," and the negligent acts (dispensing the wrong drug) did not cause *"at the time* objective symptoms of an injury." (Emphasis added.) The glove just does not fit. This is clearly not a case of negligently inflicted emotional injury; and I would hold that the trial judge was correct in granting summary judgment to Sav On.

YOUNG, J., dissenting:

While I agree with the dissenting opinion of CHIEF JUSTICE SPRINGER, I write separately because I am disturbed by the majority's casual adoption of a radical and unprecedented expansion in the scope of potential NIED liability.

In State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985), we first allowed bystander NIED recovery by adopting the California Supreme Court's reasoning in Dillon v. Legg, 441 P.2d 912 (Cal. 1968). As my dissenting colleague points out, this cause of action has heretofore been subject to strict limitations. Although the majority pays lip service to these limitations, it ultimately eschews them in favor of a much less restrictive foreseeability test. It seems to me that under the majority opinion, NIED damages will be recoverable—or claimed—as a matter of course in virtually every personal injury action; I can hardly think of a case in which it is not foreseeable that an injured person will have a close friend or relative who may suffer severe emotional distress at the sight of a loved one's suffering.

Thus, in only thirteen years, by judicial decision alone, we have created what is in effect a new and extremely broad field of litigation. I can think of no other area in which the law has changed so rapidly in the absence of legislative action.

Moreover, I believe that the majority's decision today will have far-reaching policy ramifications. By effectively eliminating the restrictions which *Eaton* and *Dillon* place on the NIED cause of action, I fear that the majority lays the foundation for an exponential proliferation in the number of NIED claims brought in Nevada. It seems likely that this will, in turn, apply significant

upward pressure on personal injury settlement values and, consequently, liability insurance rates. A policy change of this magnitude ought to be made through legislative processes rather than judicial ones. Therefore, I respectfully dissent.