LEILA-JADE G. SANCHEZ AND TAYLOR N. SANCHEZ, MINORS, BY AND THROUGH JOSETTE SANCHEZ, THEIR GUARDIAN; JOSETTE SANCHEZ, AN INDIVIDUAL; THERESE CRUZ-BLAS AND DELBERT M. BLAS, AS CO-SPECIAL ADMINISTRATORS OF THE ESTATE OF GREGORY SANCHEZ, JR., DECEASED; ROBERT MARTINEZ, AN INDIVIDUAL; AND MICHELLE MARTINEZ, AN INDIVIDUAL, APPELLANTS, *v.* WAL-MART STORES, INC., A FOREIGN CORPORATION; LONGS DRUG STORES CO., A FOREIGN CORPORATION; WALGREEN CO., A FOREIGN CORPORATION; CVS PHARMACY, INC., A FOREIGN CORPORATION; RITE-AID, A FOREIGN CORPORATION; ALBERTSON'S, INC., DBA SAV-ON PHARMACY, A FOREIGN CORPORATION; AND LAM'S PHARACY, INC., A NEVADA CORPORATION, RESPONDENTS.

No. 47851

December 24, 2009                              221 P.3d 1276

*Marquis & Aurbach* and *Phillip S. Aurbach* and *Micah S. Echols*, Las Vegas; *Patti, Sgro & Lewis* and *Stephen K. Lewis*, Las Vegas; *Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg*, Las Vegas, for Appellants.

*Phillips, Spallas & Angstadt, LLC*, and *John W. Kirk*, Las Vegas; S*hook, Hardy & Bacon, LLP*, and *Frank C. Rothrock*, Irvine, California, for Respondent Wal-Mart Stores, Inc.

*Hutchison & Steffen, LLC*, and *Michael K. Wall* and *L. Kristopher Rath*, Las Vegas, for Respondent Longs Drug Stores.

*Backus Carranza* and *Leland Eugene Backus* and *Edgar Carranza*, Las Vegas, for Respondent Walgreen Company.

*Pyatt Silvestri & Hanlon* and *Carrie McCrea Hanlon*, Las Vegas, for Respondent CVS Pharmacy, Inc.

*Laxalt & Nomura* and *Lon A. Burke*, Las Vegas; *Kelly, Herlihy & Klein LLP* and *Jonathan Allan Klein*, San Francisco, California, for Respondent Rite-Aid Corporation.

*Thorndal, Armstrong, Delk, Balkenbush & Eisinger* and *Brian K. Terry* and *Christopher J. Curtis*, Las Vegas, for Respondents Albertson's, Inc., and Lam's Pharmacy, Inc.

## OPINION

By the Court, HARDESTY, C.J.:

This appeal raises issues concerning whether a pharmacy owes a duty of care to unidentified third parties who were injured by a pharmacy customer who was driving while under the influence of controlled prescription drugs. In addressing this appeal, we consider two main arguments: (1) whether, under common-law principles, pharmacies have a duty to act to prevent a pharmacy customer from injuring members of the general public; and (2) whether Nevada's pharmacy statutory and regulatory laws allow third parties to maintain a negligence per se claim for alleged violations concerning dispensation of prescription drugs and maintenance of customers' records.

The underlying matter arose after a pharmacy customer, while driving under the influence of prescription drugs, allegedly caused an automobile accident resulting in one person's death and severe injuries to another. Appellants filed a wrongful death and personal injury complaint against, among others, respondent pharmacies that filled multiple prescriptions for the woman driving the car. The appellants claimed that because the pharmacies had knowledge of the woman's prescription-filling activities, the pharmacies owed appellants a duty of care to not fill the woman's prescriptions. The pharmacies filed a motion to dismiss the action, which the district court granted after finding that the pharmacies did not owe appellants a statutory duty of care, and thus, that appellants' claims failed to state a valid cause of action.

We conclude that pharmacies do not owe a duty of care to unidentifiable third parties. Moreover, Nevada's pharmacy statutes and regulations concerning prescription drug dispensation and customer recordkeeping maintenance are not intended to protect the general public from the type of injury sustained in this case, and thus, do not support the appellants' negligence per se claim. We therefore affirm.

### RELEVANT FACTS AND PROCEDURAL HISTORY

On June 4, 2004, while driving on U.S. Highway 95 in Las Vegas, Gregory Sanchez, Jr., stopped on the side of the road to fix a flat tire. Appellant Robert Martinez, Sanchez's co-worker, arrived at the scene to assist Sanchez. While Martinez and Sanchez

were transferring items from Sanchez's vehicle into Martinez's vehicle, they were struck by defendant Patricia Copening's vehicle.[1] As a result of the collision, Sanchez died and Martinez was seriously injured. Copening was arrested for driving under the influence of controlled substances.

Appellants, Sanchez's minor daughters, his widow, and the personal representatives of his estate, and Martinez and his wife, filed a wrongful death and personal injury complaint against Copening, two medical doctors, and a medical association. Through discovery, appellants learned that in June 2003, the Prescription Controlled Substance Abuse Prevention Task Force sent a letter to the pharmacies that had dispensed to, and physicians who had written prescriptions for, Copening, concerning Copening's prescription-filling activities. The letter informed the pharmacies and physicians that from May 2002 to May 2003, Copening had obtained approximately 4,500 hydrocodone pills at 13 different pharmacies. Based on the Task Force letter, appellants moved the district court and were granted leave to file a second amended complaint to add the following defendants to the action: Wal-Mart Stores, Inc.; Longs Drug Stores Co.; Walgreen Co.; CVS Pharmacy, Inc.; Rite-Aid; Albertson's Inc., d/b/a Sav-on Pharmacy; and Lam's Pharmacy, Inc.

As to the pharmacies, the second amended complaint alleged that Copening was under the influence of controlled substances when the accident occurred and that the pharmacies had filled Copening's prescriptions after they had received a Task Force letter informing them of her prescription-drug activities. The complaint further asserted that after receiving the Task Force letter, the pharmacies continued providing Copening with the controlled substances that she used before the accident. The complaint did not allege any irregularities on the face of the prescriptions themselves. Nor did the complaint allege that the prescriptions presented by Copening to the pharmacies were filled by the pharmacies in violation of the prescriptions' language, were fraudulent or forged, or involved dosages that, individually and if taken as directed, were potentially harmful to Copening's health.

The pharmacies answered the complaint and asserted, as an affirmative defense, that appellants' second amended complaint failed to state a claim upon which relief could be granted. Thereafter, the pharmacies moved the district court to dismiss the claims asserted against them in appellants' second amended complaint on the basis that no duty was owed to appellants. The pharmacies subsequently moved the district court for summary judgment. Appellants opposed the motions.

---

[1]Copening is not a party to this appeal. Appellants' claims against her remain pending in the district court, and we make no observations regarding the substantive legal issues pending in the underlying action.

At the hearing on the pharmacies' motions, the district court stated that no statute imposed a duty on the pharmacies to take action after receiving the Task Force letter. The district court further stated that absent a legislative duty, the case was governed by Nevada's dram-shop cases and that there appeared to be no material difference between a bartender providing a customer alcohol and a pharmacist filling a customer's prescription, and therefore, proximate cause did not exist.[2] Thereafter, the district court entered a summary order that granted the pharmacies' motions to dismiss under NRCP 12(b)(5) and denied as moot the pharmacies' summary judgment motions. The court subsequently certified its order as final under NRCP 54(b). This appeal followed.

## DISCUSSION

The issues presented in this appeal raise two long-standing negligence principles. First, we consider whether pharmacies owe a duty of care to unidentified third parties injured by a pharmacy customer or whether public policy creates a duty of care for pharmacies, which when breached, supports a common-law negligence claim. Second, we decide if Nevada's pharmacy statutes and regulations create a statutory duty to support appellants' negligence per se claim against the pharmacies.

### Standard of review

A district court order granting an NRCP 12(b)(5) motion to dismiss is subject to rigorous appellate review. *Lubin v. Kunin*, 117 Nev. 107, 110-11, 17 P.3d 422, 425 (2001). Similar to the trial court, this court accepts the plaintiffs' factual allegations as true, but the allegations must be legally sufficient to constitute the elements of the claim asserted. *Malfabon v. Garcia*, 111 Nev. 793, 796, 898 P.2d 107, 108 (1995). In reviewing the district court's dismissal order, every reasonable inference is drawn in the plaintiffs' favor. *Id.* Accordingly, to prevail in this appeal, the appellants must demonstrate that a duty of care was owed to them by the pharmacies, which is a question of law that we review de novo. *Turner v. Mandalay Sports Entm't*, 124 Nev. 213, 217, 220-21, 180 P.3d 1172, 1175, 1177 (2008).

### Pharmacies do not have a duty to act to prevent a pharmacy customer from injuring an unidentified third party

Appellants argue that the district court improperly dismissed their common-law negligence claims for two reasons. First, appellants

---

[2]We note that the district court's reliance on Nevada's dram-shop cases was unnecessary. In particular, it appears that after concluding that there was no legislative mandate imposing a legal duty, the district court next considered whether

contend that the pharmacies had a duty to prevent harm to appellants because Copening was a customer to whom the pharmacies continuously dispensed drugs, and the pharmacies had notice from the Task Force letter that Copening was a potential drug abuser. Second, appellants assert that NRS 453.1545 establishes a public policy duty to protect the general public, including appellants. The pharmacies counter that no special relationship exists between the pharmacies and appellants, and that no public policy duty is created by NRS 453.1545's enactment. We agree with the pharmacies' position that the district court properly declined to impose a duty on the pharmacies for the appellants' benefit.

*No special relationship exists to justify imposing a duty on pharmacies in favor of third parties*

It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Turner*, 124 Nev. at 217, 180 P.3d at 1175. With regard to the duty element, under common-law principles, no duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct. *See Mangeris v. Gordon*, 94 Nev. 400, 402, 580 P.2d 481, 483 (1978). An exception to this general rule arises, however, and an affirmative duty to aid others is recognized when (1) a special relationship exists between the parties or between the defendant and the identifiable victim, and (2) the harm created by the defendant's conduct is foreseeable. *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001); *Elko Enterprises v. Broyles*, 105 Nev. 562, 565-66, 779 P.2d 961, 964 (1989); *Mangeris*, 94 Nev. at 402, 580 P.2d at 483.

As a threshold matter, to determine whether appellants can maintain a common-law negligence claim against the pharmacies for Copening's criminal act of driving while under the influence of controlled substances, we must consider the relationship between the parties and if a legal obligation can be imposed upon the pharmacies for the third-party appellants' benefit. The issue of whether, under common-law principles, a special relationship exists between a pharmacy and a third party to justify imposing a duty of care for the third party's benefit is an issue of first impression. We find persuasive to our analysis a Florida District Court of Appeal opinion in-

---

proximate cause existed. An analysis of proximate cause, however, was not required, as the district court correctly noted the absence of a legal duty imposed on respondents in favor of appellants. Accordingly, we determine that we need not consider the proximate cause element in this matter. *See Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) (noting that this court will affirm a district court's order if the district court reached the correct result, even for the wrong reason).

volving a pharmacy's potential liability to a third party. *Dent v. Dennis Pharmacy, Inc.*, 924 So. 2d 927 (Fla. Dist. Ct. App. 2006).

In *Dent*, a motorist, Dent, was involved in a collision with a pharmacy patron who drove while under the influence of prescribed medication and fell asleep at the wheel, causing injuries to Dent. 924 So. 2d at 928. Dent filed a negligence action against the pharmacy, alleging that because the pharmacy voluntarily undertook the duty of warning the patron about the prescription drug's effect on driving, the pharmacy owed a duty of care to Dent, the injured motorist. *Id.* at 929. The pharmacy moved the trial court to dismiss the action on the basis that it owed no duty to an unidentified third party. The trial court agreed and dismissed Dent's complaint. *Id.*

On appeal, the *Dent* court recognized that in the context of professional relationships, the duty element of negligence could be established in one of two ways: (1) a plaintiff having a direct relationship with the defendant, or (2) by establishing that the plaintiff is a known or identifiable third party to whom the defendant owes a legal duty. *Id.* The court determined that no duty of care was owed to Dent because she had no direct relationship with the pharmacy; the pharmacy merely filled its customer's prescription and warned the customer of the medication's side effects. *Id.* The court further concluded that Dent was an anonymous member of the driving public and was therefore not a known or identifiable third party. The pharmacy had no control over whether its customer would take the medication and then drive, or even take the medication at all. *Id.* Therefore, a finding that Dent was a known or identifiable third party to whom the pharmacy owed a legal duty " 'under those circumstances would create a zone of risk [that] would be impossible to define.' " *Id.* (quoting *Cheeks v. Dorsey*, 846 So. 2d 1169, 1173 (Fla. Dist. Ct. App. 2003)). Thus, the pharmacy's actions did not create a legal duty in favor of the motoring public.

Following the Florida court's reasoning, we conclude that in this matter the pharmacies did not owe a duty to the third-party appellants. The pharmacies have no direct relationship with the third-party appellants. In addition, as in *Dent*, the appellants in this matter are unidentifiable members of the general public who were unknown to the pharmacies.[3] Thus, the pharmacies' acts of dis-

---

[3]We note that, at the time that the underlying accident occurred, the pharmacies had no obligation to do anything after receiving the Task Force letter and only limited authority to refuse to fill any prescriptions. In 2006, however, the Board of Pharmacy amended its regulations, which may have created a special relationship that could justify imposing a duty in favor of third parties. NAC 639.753 provides that if a pharmacist declines to fill a prescription, because in his professional judgment the prescription is (1) fraudulent, (2) potentially harmful to the customer's health, (3) not for a legitimate medical purpose, or (4) filling the prescription would be unlawful, the pharmacist must in a timely manner contact the prescribing physician to resolve the pharmacist's concerns. The amendment further provides that after speaking with the physician, the phar-

pensing prescription drugs to Copening did not create a legal duty. We conclude that the district court did not err in dismissing appellants' negligence causes of action asserted against the pharmacies on this ground.[4]

> *NRS 453.1545's public policy does not create a duty of care for pharmacies*

Appellants allege that while NRS 453.1545's language does not expressly require pharmacies to take action to prevent prescription-drug abuse, the statute's language and legislative history implies that pharmacies are required to take action to fulfill the statute's purpose. The pharmacies assert that neither the statute's plain language nor its legislative history demonstrates that the Legislature intended to impose any obligation on pharmacies in favor of third parties. We agree with the pharmacies.

NRS 453.1545(1) requires Nevada's State Board of Pharmacy and the Investigation Division of the Department of Public Safety to create a computerized program to track controlled substance prescriptions that are filled by registered pharmacies or that are dispensed by a registered practitioner. The tracking program is designed to provide information relating to a customer's inappropriate use of specific controlled substances filled by board-registered pharmacies and practitioners:

> 1. The Board and the Division shall cooperatively develop a computerized program to track each prescription for [specific] controlled substance[s] . . . filled by a pharmacy that is registered with the Board or that is dispensed by a practitioner who is registered with the Board. The program must:

---

macist may fill the prescription if "the pharmacist reasonably believes, in his professional judgment, that the prescription is" not fraudulent or harmful to the patient's health or is lawful or for a legitimate medical purpose. NAC 639.753(3)(a)-(d). If one of these conditions is not met, after discussing the prescription with the physician, the pharmacist is mandated *not* to fill the prescription and must retain the prescription. NAC 639.753(4). We make no determination as to whether this regulation imposes a duty on pharmacies or creates a special relationship with their customers.

[4]Because we conclude that no direct relationship exists between the pharmacies and the third-party appellants, or that appellants are identifiable members of the general public, to impose a duty on pharmacists for the general public's protection, we need not consider whether the pharmacies' actions created foreseeable harm to appellants.

Appellants' additional argument—that a common-law negligence claim is established merely as a result of alleged violations of a professional standard of care—fails. Unlike *Mainor v. Nault*, 120 Nev. 750, 101 P.3d 308 (2004), where a special relationship existed between the plaintiff, the client, and the plaintiff's attorneys, here, no special relationship exists between appellants and the pharmacies.

(a) Be designed to provide information regarding:

(1) The inappropriate use by a patient of [specific] controlled substances . . . to pharmacies, practitioners and appropriate state agencies to prevent the improper or illegal use of those controlled substances.

NRS 453.1545(1)(a)(1). Although NRS 453.1545(1)(a)(1) states that the information will be provided to pharmacies, subsection 5 of the same statute explains that the "[i]nformation obtained from the program . . . is confidential and, except as otherwise provided by this section . . . must not be disclosed to any person." NRS 453.1545(5).

The Board or Division are required, however, to report any suspected fraud or illegal activity to law enforcement or the appropriate occupational licensing board. NRS 453.1545(4). Thus, while the statute's language states that gathering information related to prescription-drug use and disseminating it to pharmacies and practitioners is to prevent prescription-drug abuse, only the Board or Division may share the information gathered from the pharmacies. Pharmacies and practitioners are expressly prohibited from disclosing any information. NRS 453.1545(5). Further, nothing in NRS 453.1545 requires pharmacies to take action to protect the general public after receiving a Task Force letter. Thus, based on the statute's plain language, it is evident that the Legislature did not intend to create a policy that requires pharmacies to protect third parties from a pharmacy customer's actions.

NRS 453.1545's legislative history further supports our conclusion. The statute's underlying purpose is to computerize a manual system for tracking prescription-drug use, *i.e.*, a recordkeeping system. *See* Hearings on S.B. 36 Before the Senate Comm. on Human Resources and Facilities and Before the Assembly Comm. on Health and Human Services, 68th Leg. (Nev., January 25, February 1, June 7, 1995). When suggested to the legislators that another purpose of the computerized program was to identify drug abusers early on before they become "serious drug users, kill themselves or someone else," a legislator responded that the Legislature is not responsible for people's personal decisions and, ultimately, it is the Board's duty to prosecute regulatory violations. Hearing on S.B. 36 Before the Senate Comm. on Human Resources and Facilities, 68th Leg. (Nev., February 1, 1995) (testimony by lobbyist for the Nevada State Board of Pharmacy, and comment by state senator); Hearing on S.B. 36 Before the Assembly Comm. on Ways and Means, 68th Leg. (Nev., June 20, 1995) (comment by committee vice-chair). Subsequently, when it enacted NRS 453.1545, the Legislature declined to impose additional obligations on pharmacies. NRS 453.1545; Hearing on S.B. 36 Before the Senate Comm. on Human Resources and Facilities, 68th Leg. (Nev., February 1, 1995) (testimony by lobbyist for the Nevada State Board of Pharmacy).

Thus, the legislative history demonstrates that NRS 453.1545's enactment was intended to enhance recordkeeping by permitting more thorough and accurate information to be available to enforcement and regulatory authorities and for transmission by the Task Force to physicians, pharmacies, and others. We therefore reject appellants' contention that NRS 453.1545 creates a public policy duty for pharmacies to protect third parties.

*Nevada's pharmacy statutes and regulations do not support appellants' negligence per se claim against the pharmacies*

Appellants assert that the district court erred in dismissing their negligence per se claim against the pharmacies because the pharmacies violated a number of Nevada statutes and regulations enacted to protect the general public, of whom the appellants are members, from the unlawful distribution of controlled substances.[5] The pharmacies counter that the statutes and regulations relied on by appellants do not mandate that a pharmacist must refuse to fill a valid prescription for the general public's protection.

A negligence per se claim arises when a duty is created by statute. *Torrealba v. Kesmetis*, 124 Nev. 95, 178 P.3d 716 (2008). A civil statute's violation establishes the duty and breach elements of negligence when the injured party is in the class of persons whom the statute is intended to protect and the injury is of the type against which the statute is intended to protect. *Ashwood v. Clark County*, 113 Nev. 80, 86, 930 P.2d 740, 744 (1997); *Sagebrush Ltd. v. Carson City*, 99 Nev. 204, 208, 660 P.2d 1013, 1015 (1983). But a statute that regulates the communication of information regarding the administration of drugs does not impose a duty on a pharmacy that runs to an unidentifiable third party. *Crippens v. Sav On Drug Stores*, 114 Nev. 760, 763 n.1, 961 P.2d 761, 763 n.1 (1998).

The statutes and regulatory provisions the appellants rely on to assert a negligence per se claim against the pharmacies are not in-

---

[5]Appellants cite to the following statutes and regulations to support their negligence per se claim: NRS 453.1545 (creating computerized program to track prescriptions for controlled substances); NRS 453.256 (outlining requirements for dispensing specific controlled substances); NRS 453.257 (prohibiting the filling of second or subsequent prescriptions for certain controlled substances "unless the frequency of prescriptions is in conformity with the directions for use" and the increased amount is verified by the practitioner personally by telephone or in writing); NRS 639.2392 (establishing requirements for maintaining patient records); NRS 639.2393 (establishing limitations on filling controlled substance prescriptions); NAC 639.485 (concerning the maintenance of records for controlled substances); NAC 639.742 (discussing the duties and authority of a dispensing practitioner to dispense controlled substances); NAC 639.745 (outlining duties concerning dispensing controlled substances); NAC 639.926 (regarding dispensing controlled substances to certain individuals and maintaining records).

tended for the general public's protection or to protect against any injury that the third-party appellants may have sustained. The duty owed under these statutes or regulations is to the person for whom the prescription was written, the pharmacy's customer, if anyone, and not for the general public's protection. And although various statutory and regulatory provisions may express standards of care for the practice of pharmacology, under the circumstances of this case, those standards of care do not extend to unidentified third parties. Therefore, we conclude that the district court properly dismissed appellants' negligence per se claims asserted against the pharmacies.[6]

## CONCLUSION

We affirm the district court's order dismissing appellants' action against the pharmacies for failure to state a claim upon which relief can be granted.[7]

PARRAGUIRRE, DOUGLAS, GIBBONS, and PICKERING, JJ., concur.

CHERRY, J., with whom SAITTA, J., agrees, dissenting:

I differ with my colleagues as to their resolution of this appeal. In particular, I conclude that the district court erred when it granted the pharmacies' motions to dismiss because the appellants have sufficiently stated common-law negligence and negligence per se claims that preclude dismissal. I therefore dissent.

## DISCUSSION

### Common-law negligence cause of action

The majority concludes that no special relationship exists to extend a duty of care from the pharmacies to the third-party appellants. I disagree with this conclusion. This court has recognized a special relationship between an innkeeper-guest, teacher-student, and employer-employee. See Lee v. GNLV Corp., 117 Nev. 291, 295, 22 P.3d 209, 212 (2001). The relationship between a pharmacy and pharmacy customer should also be considered a special relationship. Thus, in my opinion, appellants' allegations in their complaint are

---

[6]The pharmacies contend that Nevada State Board of Pharmacy v. Garrigus, 88 Nev. 277, 496 P.2d 748 (1972), is dispositive of appellants' negligence per se claim. But Garrigus is inapposite to our consideration of whether the pharmacies owed a duty to appellants, as that case concerned whether the Nevada State Board of Pharmacy's decision to revoke several pharmacists' licenses was supported by substantial evidence. Id. at 278-79, 496 P.2d at 749.

[7]After briefing in this appeal had concluded, appellants filed a supplemental brief. In that supplemental brief, appellants provided additional authority, which was available when their reply brief was filed, and appellants asserted a new argument that was not previously raised in their opening or reply briefs. We did not consider the arguments raised in appellants' supplemental brief because they exceeded the scope of NRAP 31. See U.S. v. Vazquez-Rivera, 407 F.3d 476, 487

legally sufficient to constitute a common-law negligence cause of action.

Generally, a defendant does not have a duty to control another's dangerous conduct or to warn others when dangerous conduct arises. *Mangeris v. Gordon*, 94 Nev. 400, 402, 580 P.2d 481, 483 (1978). But an exception to this general rule occurs when a special relationship exists between the defendant and the actor who allegedly caused the injury. *Id.* If a special relationship exists, the defendant has a duty to take measures to protect foreseeable victims from foreseeable harm. *See Elko Enterprises v. Broyles*, 105 Nev. 562, 565-66, 779 P.2d 961, 964 (1989); *El Dorado Hotel v. Brown*, 100 Nev. 622, 627, 691 P.2d 436, 440 (1984), *overruled on other grounds by Vinci v. Las Vegas Sands*, 115 Nev. 243, 984 P.2d 750 (1999). Here, contrary to the majority's position, I determine that the pharmacies owed appellants a duty of care to, among other things, investigate the validity of Copening's prescriptions or to refuse to fill her prescriptions, if warranted, based on the special relationship that exists between a pharmacist and pharmacy customer, together with the information distributed by the Task Force. While I conclude that sufficient information exists to reverse the district court's dismissal of appellants' common-law negligence claim, because the underlying proceedings are at an early stage of the litigation, there also remain unanswered questions relating to foreseeability that justify remanding this appeal to the district court for further proceedings.

### *Special relationship element of common-law negligence cause of action*

A pharmacist's professional standards of care, considered with the notice contained in the Task Force letter, justifies extending the duty owed by the pharmacies under a common-law negligence cause of action to these appellants. Not only do pharmacists possess an expertise in the dispensation of prescription drugs, NRS 639.213; NRS 639.0124(4), as recognized by the majority, but pharmacists must ensure that the drugs sought by a customer are "dispensed only for medically necessary purposes and according to prevailing standards of care for practitioners practicing in the specialty claimed or practiced by the dispensing practitioner." NAC 639.742(3)(h). Nevada's Legislature has recognized that pharmacists are trained to recognize potential drug abuse based on the frequency of a drug's refill and dosages. NRS 639.0124; NAC 639.707(4). Before filling a

---

(1st Cir. 2005) (considering authority raised in a supplemental brief that was not raised in the opening brief because there was an intervening change in law); *U.S. v. Khorozian*, 333 F.3d 498, 506 n.7 (3d Cir. 2003) (providing that FRAP 28(j) cannot be used to raise supplemental arguments); *U.S. v. Kimler*, 335 F.3d 1132, 1138 n.6 (10th Cir. 2003) (refusing to consider an argument that should have been raised in the party's opening or reply brief).

prescription, a pharmacist must review a customer's records to determine the prescription's therapeutic appropriateness by considering possible drug abuse, overuse of a particular drug, adverse side effects, or improper dosages or treatment durations. NAC 639.707(4). If a pharmacist reasonably believes that a prescription for a controlled substance was not issued in the normal course of a professional's practice, a pharmacist is prohibited from filling the prescription. NRS 453.381(4).

Based on a pharmacist's professional standards of care, the Legislature contemplated that pharmacists may be subject to civil liability for improperly dispensing prescription drugs when it enacted NRS 453.256(6). This statute provides that civil liability cannot be imposed upon a pharmacist if the pharmacist acts in ''good faith in reliance on a reasonable belief that an order purporting to be a prescription was issued by a practitioner in the usual course of professional treatment,'' implying that civil liability could arise if the good faith requirement is not met. *See also International Game Tech. v. Dist. Ct.*, 122 Nev. 132, 154, 127 P.3d 1088, 1103 (2006) (noting that this court presumes that when the Legislature enacts a statute it does so ''with full knowledge of existing statutes relating to the same subject'' (internal quotes and citation omitted)). Consequently, the special relationship between a pharmacist and pharmacy customer, entails more than blindly filling prescriptions, and thus, a special relationship is created between a pharmacist and customer when a prescription is filled.

Generally, the relationship between a customer and pharmacist does not establish a duty in favor of third parties. This case, however, includes a component that the majority ignores—notice. The actual notice to the pharmacies contained in the Task Force letter (which, according to the complaint, was sent to and received by all the pharmacies in this action), together with a pharmacist's professional standard of care, noted above, clearly refutes the majority's conclusion that no special relationship exists to justify extending a duty of care owed by the pharmacies to the appellants.

Appellants' second amended complaint alleges that the pharmacies that received the Task Force letter outlining Copening's prescription-filling activities were informed that Copening had received 4,500 hydrocodone pills within a 12-month period by having numerous prescriptions filled at 13 different pharmacies.[1] The complaint also contends that despite receiving the Task Force letter the pharmacies continued to fill narcotic or SOMA prescriptions for

---

[1]Hydrocodone is a narcotic pain reliever used for the relief of moderate to moderately severe pain and has a high potential for abuse. *Physicians' Desk Reference* 3143-44 (63d ed. 2009); NRS 453.176; NAC 453.520. It may impair one's mental or physical abilities required for the performance of potentially hazardous tasks, such as driving a car. *Physicians' Desk Reference* 3143-44 (63d ed. 2009).

Copening.[2] It is unclear why Copening was filling prescriptions for this amount of narcotic medication within a year's time. But the pharmacies had, at a minimum, inquiry notice that continuing to fill Copening's prescriptions for hydrocodone or SOMA could result in harm to herself or others. *See Ogle v. Salamatof Native Ass'n, Inc.*, 906 F. Supp. 1321, 1326 (D. Alaska 1995) (explaining that inquiry notice exists when one has knowledge of facts that would lead a reasonable and prudent person using ordinary care to make further inquiries).

Here, the pharmacists had a duty to review Copening's prescription records, including giving consideration to the Task Force letter, before filling her next prescription. In light of the Task Force letter identifying Copening's prescription history, the pharmacies were required to evaluate the prescription's therapeutic appropriateness (considering possible drug abuse, overuse of a particular drug, or improper dosages or treatment durations). NAC 639.707(4). In their professional analysis, if the pharmacists reasonably believed that Copening's prescriptions for hydrocodone were not issued in the normal course of her physician's practice, they were prohibited from filling the prescriptions. NAC 639.742(3)(h); NRS 453.381(4). Thus, the pharmacists owed appellants a duty to exercise that standard of care that is required of the pharmacy profession in the same or similar circumstances. *See Dooley v. Everett*, 805 S.W.2d 380 (Tenn. Ct. App. 1990); *see also Pittman v. Upjohn Co.*, 890 S.W.2d 425, 434 (Tenn. 1994) (suggesting that because a pharmacy has a duty to do more than fill a customer's prescription correctly, a pharmacy may owe a duty to a noncustomer).

For these reasons, I conclude that the first element to the common-law exception for a duty of care has been established. The next issue presented is whether the harm created by the pharmacies' dispensation of the drugs to Copening was foreseeable.

*Foreseeability element of common-law negligence cause of action*

This court has held that "[a] negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act." *Taylor v. Silva*, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980). A defendant's liability can be extinguished when an unforeseeable intervening cause occurs between a defendant's negligence and a plaintiff's injury. *El Dorado Hotel v. Brown*, 100 Nev. 622,

---

[2]SOMA, also known as carisoprodol, is used for the relief of acute pain. *Physicians' Desk Reference* 1931 (63d ed. 2009). It is recommended that it only be used for "acute treatment periods up to two or three weeks," and it also may impair one's ability to operate a motor vehicle. *Id.* According to appellants' complaint, the combination of hydrocodone and SOMA is known as "The Vegas Cocktail."

628-29, 691 P.2d 436, 441 (1984), *overruled on other grounds by Vinci v. Las Vegas Sands*, 115 Nev. 243, 984 P.2d 750 (1999). But when a "third party's intervening intentional act is reasonably foreseeable, a negligent defendant is not relieved of liability." *Id.* at 629, 691 P.2d at 441. The issue of foreseeability, thus, can be a mixed question of law and fact. *Elko Enterprises v. Broyles*, 105 Nev. 562, 566, 779 P.2d 961, 964 (1989). Because the majority concludes that no special relationship exists between the pharmacies and third-party appellants to establish a duty of care owed to appellants, they decline to reach the foreseeability issue. As noted above, however, I conclude that the relationship between the pharmacy and its customer is sufficient to establish the first duty element and that sufficient allegations were pleaded by appellants to address the foreseeability element that precluded the district court from dismissing the common-law negligence cause of action.

According to appellants' second amended complaint, the Task Force notified the pharmacies that Copening was potentially abusing drugs. The Task Force informed each pharmacy that Copening went, during a 12-month period, to multiple pharmacies to fill her prescriptions. According to appellants, in the months before the accident, the pharmacies continued to fill Copening's prescriptions for hydrocodone and SOMA and that the amount of prescriptions filled for Copening provided her with at least 25 pills a day. Why Copening obtained this amount of a narcotic prescription in a 12-month period is not clear, but it may involve misuse of prescription drugs. In my view, these are reasonable inferences that could be drawn from the facts alleged in the appellants' complaint, and the district court was required to accept them as true. *See Malfabon v. Garcia*, 111 Nev. 793, 796, 898 P.2d 107, 108 (1995) (providing that, in the context of a motion to dismiss under NRCP 12(b)(5), the plaintiff's allegations are taken as true and every reasonable inference is resolved in plaintiff's favor). Thus, it may have been reasonably foreseeable that Copening could not be expected to take the medication as prescribed and would drive while under the prescription drug's influence. A natural consequence of those combined actions was that Copening could cause harm to herself or others.

Although the appellants' allegations are not conclusive of the pharmacies' potential liability, appellants were not required to prove their claim against the pharmacies while defending a motion to dismiss. *See Malfabon*, 111 Nev. at 796, 898 P.2d at 108. At a minimum, questions of fact remain as to whether the pharmacies had actual or inquiry notice that Copening was potentially abusing drugs and that she was purportedly pharmacy shopping. Thus, I conclude that sufficient allegations, raised in appellants' pleadings, regarding foreseeability exist and coupled with my determination that a special relationship, together with the actual notice received by the phar-

macies, exists to support imposing a duty on the pharmacies for appellants' benefit. I would reverse and remand this issue to the district court for further proceedings.

### Negligence per se cause of action that precludes dismissal

The majority concludes that a negligence per se claim is unavailable to appellants because the statutes and regulations relied on by appellants were not intended for the general public's protection or to protect against any injury that third parties may sustain. I disagree.

A negligence per se claim is available when a defendant violates a statute that is designed to protect others against the type of injury that was incurred. *Ashwood v. Clark County*, 113 Nev. 80, 86, 930 P.2d 740, 744 (1997). The Legislature has recognized that pharmacology affects public safety and welfare. NRS 639.213. Consequently, the Legislature regulates the profession, including in what manner and when controlled substances may be dispensed. *See* NRS 639.2171; NRS 639.0124; NRS 453.381. To that end, the Legislature directed the Board of Pharmacy to adopt regulations "as are necessary for the protection of the public, appertaining to the practice of pharmacy." NRS 639.070(1)(a).

Nevada law requires pharmacists to review customers' records before filling prescriptions to determine prescriptions' therapeutic appropriateness. NAC 639.707(4). Pharmacists must ensure that the substance is being dispensed solely for medically necessary purposes and in accordance with prevailing professional standards of care. NAC 639.742(3)(h).

Based on the enactment of these statutory and regulatory provisions, it is apparent to me that the Legislature intended to prevent pharmacy shopping and the overfilling of certain controlled substances, and ultimately, to protect the general public from prescription-drug abuse and its effects. The abuse of either hydrocodone or SOMA can impair one's driving ability. In my opinion, motorists, like appellants, who are injured by an individual who is driving under the influence of prescription drugs are in the class of persons that the Legislature intended to protect and the injury is a type that the statutes and regulations intended to prevent. Having reached this conclusion, I would reverse the district court's dismissal of appellants' negligence per se claim and remand this matter to the district court for additional proceedings.

### CONCLUSION

In my view, the appellants' complaint sufficiently states a common-law negligence cause of action because the special relationship and foreseeability elements to create an affirmative duty on the pharmacies to act for the appellants' benefit have been ade-

quately pleaded. The appellants' negligence per se claim should similarly not have been dismissed under NRCP 12(b)(5), as the elements of that claim have also been met. In light of the above, I would reverse the district court's order and remand this matter to the district court to allow appellants' claims to proceed against those pharmacies that had actual or inquiry notice of the driver's prescription-filling activities. For these reasons, I dissent.