23CA0768 Peo v Brach 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0768
Mesa County District Court Nos. 22CR1121 & 22CR1226
Honorable Jeremy L. Chaffin, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nathan Dominic Brach,

Defendant-Appellant.

---

SENTENCES AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Lucy H. Deakins, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Nathan Dominic Brach, pleaded guilty to possession of a weapon by a previous offender (POWPO) and to third degree assault in Mesa County Case No. 22CR1121 and to one count of POWPO in Mesa County Case No. 22CR1226.

¶ 2    In Case No. 22CR1121, the district court sentenced Brach to 364 days in county jail for the assault charge and fifteen years of probation for the POWPO charge — with the sentences to run consecutively.  In Case No. 22CR1226, the district court sentenced Brach to fifteen years of probation, to be served concurrently with the probationary sentence in Case No. 22CR1121.  This appeal followed.  We reverse the sentence imposed in Case No. 22CR1121 and remand for resentencing, and we affirm the sentence imposed in Case No. 22CR1226.

I.    Background

¶ 3    In August 2022, Brach and his girlfriend, E.M., were watching a movie at E.M.'s home.  Brach became agitated and asked E.M. whom she was texting.  E.M. handed Brach her phone, and he threw it against the wall.  E.M. told officers that Brach grabbed her by the throat, strangled her, and pushed her against a wall and

then to the ground.  Brach then struck her head with a cordless drill, knocking her unconscious.

¶ 4    According to the affidavit in support of a warrantless arrest, when E.M. woke up, she claimed that she was wrapped in a blue plastic mattress cover.  She could hear Brach on the phone talking to someone.  E.M. heard Brach leave, and she broke out of the plastic.  E.M. locked the front door, ran into her bedroom, and called 911.  E.M. said she could hear Brach knocking on and kicking the front door.  Eventually, Brach kicked in the front door and entered E.M.'s home.  The police arrived soon after.

¶ 5    When the police searched the apartment, they found numerous bullets throughout the home.  During interviews, E.M. confirmed that Brach owned firearms, despite prior convictions prohibiting him from possessing weapons.  Brach was charged in Case No. 22CR1121 with attempt to commit second degree murder, two counts of second degree assault, felony menacing, false imprisonment, criminal mischief, and three crime of violence sentence-enhancer counts.

¶ 6    Officers later learned that Brach owned a fifth-wheel camper, which was parked on E.M.'s brother's property, and that there were

guns in the camper. When officers searched the camper, they found numerous firearms, ammunition, and apparent explosives. Based on the possession of those weapons, the People charged Brach with six counts of POWPO in Case No. 22CR1226.

¶ 7 Brach reached a global plea agreement with the prosecution. In Case No. 22CR1121, Brach agreed to plead guilty to an added POWPO count and an added third degree assault count in exchange for dismissal of the remaining charges. In Case No. 22CR1226, Brach agreed to plead guilty to one POWPO count in exchange for dismissal of the remaining charges.

¶ 8 After accepting Brach's guilty pleas, the district court sentenced Brach as mentioned above.

## II.    Analysis

¶ 9 Brach argues that (1) the district court erred in sentencing him to imprisonment on one charge and probation on another charge in Case No. 22CR1121; (2) the district court erred by imposing probation without his consent; (3) his guilty pleas are invalid because they were not made knowingly, intelligently, and voluntarily; and (4) his fifteen-year probationary sentence for a POWPO offense is disproportionate and constitutes cruel and

unusual punishment.  We agree with Brach's first contention and disagree with his remaining contentions.

A.   The Sentence Imposed in Case No. 22CR1121 Violates *Allman v. People*

¶ 10   Brach first argues that his sentence in Case No. 22CR1121 is illegal because he was sentenced to imprisonment for the third degree assault charge and probation for the POWPO charge in violation of *Allman v. People*, 2019 CO 78, which requires courts to choose either incarceration or probation when sentencing a defendant to multiple sentences in the same case.

1.   Standard of Review and Applicable Law

¶ 11   Whether a district court has the authority to impose a specific sentence is a question of statutory interpretation, which we review de novo.  *Snow v. People*, 2025 CO 32, ¶ 19.

¶ 12   A district court's sentencing authority derives entirely from statute.  *Allman*, ¶ 28.  Section 18-1.3-202(1)(a), C.R.S. 2025, gives district courts discretion to grant probation as an alternative to a prison sentence.  *See Allman*, ¶ 34 (recognizing that the probation statute "requires a choice between prison and probation)."  The "legislature intended to allow courts to choose only one or the

4

other." *Id.* When "a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others." *Id.* at ¶ 40.

## 2. Discussion

¶ 13 The district court sentenced Brach to 364 days in county jail for the third degree assault charge to be followed by fifteen years of probation for the POWPO charge.

¶ 14 *Allman* clarified that section 18-1.3-202 gives district courts discretion to choose between imprisonment and probation within the same case, but the statutory scheme does not "allow a court to impose sentences of imprisonment and probation for different counts in the same case." *Allman*, ¶ 38. Here, the district court acknowledged that the "options in this case are probation or prison," but it nevertheless imposed a fifteen-year probation sentence following a 364-day imprisonment sentence. This is incompatible with *Allman* and the probation statute.

¶ 15 Accordingly, we reverse the sentence imposed in Case No. 22CR1121 and remand the case to the district court for resentencing consistent with *Allman* and section 18-1.3-202.

## B. Brach Consented to Fifteen-Year Probationary Sentences

¶ 16    Brach contends that his fifteen-year probationary sentences are illegal because he did not accept such lengthy terms. We disagree.

### 1. Standard of Review and Applicable Law

¶ 17    We review the legality of a sentence de novo. *Veith v. People*, 2017 CO 19, ¶ 12.

¶ 18    Probation is an alternative to a prison sentence. *People v. Smith*, 2014 CO 10, ¶ 8. A prison sentence is primarily punitive, but probation is intended to be rehabilitative. *Id.* Because probation is an opportunity for a defendant to avoid serving a harsher sentence of incarceration, a defendant must apply for it, and receipt of probation is a privilege, not a right. *Id.*; *see also* § 18-1.3-202(1)(a) (probation is a request that the court "may grant" or deny). An offender must choose to accept the court's terms; the court may not impose a sentence of probation without the offender's consent. *Smith*, ¶ 8; *see also People v. Rollins*, 771 P.2d 32, 33 (Colo. App. 1989) (recognizing that probation "is accorded only to a defendant who seeks or is willing to accept it as a sentence"). If the

6

offender "rejects probation, the court may sentence the offender to imprisonment under section 18-1.3-104." *Smith*, ¶ 8.

## 2. Discussion

¶ 19    Brach contends that because he did not consent to fifteen years of probation, his sentences are illegal and must be vacated. Brach claims he did not consent for two reasons. First, while the district court indicated that it could sentence him to incarceration, Brach asserts that the court never raised the possibility of a fifteen-year probationary sentence before it sentenced him. Second, Brach claims that the district court never mentioned that he had to consent or that he could reject probation after hearing its terms. We are unpersuaded and address each of Brach's arguments in turn.

¶ 20    First, based on the record, we cannot say that Brach's fifteen-year probationary sentences were a surprise. Consistent with section 18-1.3-201, C.R.S. 2025, Brach requested probation. At the sentencing hearing, defense counsel argued that prison time was not appropriate for Brach, "given the facts of this case, . . . Brach's low risk assessment, . . . [and] the fact that Mr. Brach has already served 184 days in jail." Counsel also noted that Brach had a lot of

family support; he owned a welding business; and, if placed on probation, his "intent [wa]s to work with probation to do an interstate compact to Texas, and reside with his mom, and get his business up and running."

¶ 21 Under section 18-1.3-202(1)(a), a court has broad discretion to grant probation "upon such terms and conditions as it deems best." Further, the length of probation is "subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of the offense of which the defendant is convicted." *Id.*

¶ 22 At the sentencing hearing, the court mentioned that, when compared to the time Brach could spend in prison, a probationary sentence could be for an extended or indefinite length of time. As the court explained, Brach was facing a "presumptive range sentence of up to three years in prison," but "[i]f [the court] were to sentence Mr. Brach to probation, [it] c[ould] sentence him to any term including forever, the rest of his life." The court also described its reasoning for imposing a probationary sentence over incarceration:

> [A]s easy as it would be to send you to prison
> today, Mr. Brach, I don't think that just
> sending you to prison is going to address those
> issues. I don't think the community is going to
> be safer if I just sent you to prison, and then in
> three years no one's keeping an eye on you. I
> don't think that sending you to prison where
> you aren't going to go through substance
> abuse treatment, where you aren't going to get
> mental health treatment, where you aren't
> going to go through domestic violence
> treatment is going to make [E.M.] safer or the
> community safer. And so I am not going to
> send you to prison on the felony charges . . . .

¶ 23 Thus, there is ample evidence in the record demonstrating that the court and parties discussed probation extensively, including the fact that a probationary term could be lengthy, and that the district court granted probation because Brach required long-term supervision and treatment.

¶ 24 Second, the record shows that Brach consented to his probationary sentences. While Brach did not object at the time the court pronounced his sentences, he was given multiple opportunities to object, but he did not. Moreover, when the court was finished sentencing him, it asked Brach if he had "any further record [he would] like to make," and he declined to do so.

9

¶ 25    Brach claims that his failure to object does not amount to consent or acquiescence to his probation. In support, he relies on *Veith* for the proposition that "a trial court cannot impose a sentence of probation without the defendant's consent." *Veith*, ¶ 4. We agree that consent is required but conclude that Brach's reliance on *Veith* is misplaced.

¶ 26    In *Veith*, the defendant pleaded guilty to theft and securities fraud. *Id.* at ¶ 2. Veith requested probation but was sentenced to a ten-year term of incarceration plus parole for the theft count and twenty-five years of probation for the securities fraud charge. *Id.* Like Brach, Veith did not object when the judge sentenced him. *Id.* But unlike Brach, Veith did not sign any form acknowledging and accepting the terms and conditions of the probationary sentence. *Id.* at ¶ 9. Because Veith did not "sign the probation order that provided the specific terms and conditions of the probationary sentence," the court held that Veith did not consent and that "the court lacked the power to impose that sentence." *Id.* at ¶¶ 18-19.

¶ 27    Brach's situation is distinguishable. Brach signed and initialed the probation order and form outlining the standards and conditions of probation on April 19, 2023 — nearly a month after

10

the sentencing hearing and after having ample time to review and challenge the terms. Considered collectively, Brach's request for probation, his failure to object at sentencing, and his signing the sentencing order demonstrate Brach's consent to his fifteen-year probationary sentences.

## C. The District Court Properly Advised Brach of the Possible Sentencing Range

¶ 28    Alternatively, Brach argues that his guilty pleas were invalid because they were not made knowingly, intelligently, and voluntarily. We disagree.

¶ 29    The People contend that a guilty plea may be challenged and withdrawn before a defendant is sentenced under Crim. P. 32(d) or after a defendant is sentenced in a postconviction proceeding under Crim. P. 35(c). *See People v. Kirk*, 221 P.3d 63, 64-65 (Colo. App. 2009). Because Brach did not file a motion to withdraw his guilty pleas under Crim. P. 32(d), the People contend that Brach may only challenge the validity of his guilty pleas in a Crim. P. 35(c) motion and not on direct appeal.

¶ 30    Brach clarifies that his argument is not whether his attorney failed to advise him or incorrectly advised him on the sentencing

11

range, which he acknowledges requires development of the factual record and can only be accomplished in a postconviction proceeding. Rather, his argument is that the *sentencing court* failed to properly advise him of the possible sentencing range, and, therefore, his guilty pleas were not "knowing and intelligent."

¶ 31 Assuming Brach's argument is properly before us, we are not persuaded. Crim. P. 11 requires that a defendant be advised of, among other things, the "possible penalty or penalties" associated with entering a guilty plea. Crim. P. 11(b)(4). Our supreme court has construed this requirement as "charging the courts with a duty to describe the 'direct consequences' of the resulting conviction." *Craig v. People*, 986 P.2d 951, 963 (Colo. 1999) (quoting *People v. Birdsong*, 958 P.2d 1124, 1128 (Colo. 1998)).

¶ 32 During the plea hearing, Brach was informed of the potential penalties for his guilty pleas, including any aggravating or mitigating factors, and Brach informed the court he understood. Brach was also informed that the court would sentence him as it deemed appropriate, and Brach did not object or ask clarifying questions when given the opportunity. Moreover, the court mentioned that, once it reviewed the presentence investigation

report and community corrections screening, the court might determine that it was not bound by the limitation on concurrent or consecutive sentencing and that it would give Brach the opportunity to withdraw his guilty pleas.

¶ 33    Finally, when Brach entered his guilty pleas, he was informed that sentencing for both cases was "open to the [c]ourt" and signed the plea agreements anyway.  Brach's signed plea agreements state that he previously reviewed and discussed the specifications with his attorney and that he fully understood and accepted the terms. Accordingly, Brach's claim that the district court failed to advise him of the possible sentencing range and that he did not enter his pleas knowingly, intelligently, and voluntarily is without merit.

## D. Brach's Sentence Was Not Disproportionate[1]

¶ 34    Lastly, Brach argues that his fifteen-year probation sentence is disproportionate and violates the bar against cruel and unusual punishment.[2]  We disagree.

### 1. Standard of Review and Applicable Law

¶ 35    We review constitutional challenges to sentencing de novo. *Misenhelter v. People*, 234 P.3d 657, 660 (Colo. 2010).  Whether a sentence is constitutionally proportionate is a question of law that we review de novo.  *Rutter v. People*, 2015 CO 71, ¶ 12.

¶ 36    Both the United States and Colorado Constitutions prohibit "grossly disproportionate" sentences.  *Wells-Yates v. People*, 2019 CO 90M, ¶¶ 5, 10.  Proportionality is a "foundational 'precept of

---

[1] Because we are reversing and remanding the sentence imposed in Case No. 22CR1121, we address Brach's argument in this section only as it applies to Case No. 22CR1226.

[2] In footnote 3 of their answer brief, the People mention that they are "unaware of authority addressing a proportionality challenge to a *probation* sentence" and that it is "not clear that such a claim is valid given that a defendant, such as Brach, is free to reject a probation sentence."  Because the People do not develop their claim, however, we do not address it.  *See People v. Hill*, 228 P.3d 171, 176 (Colo. App. 2009) (declining to consider a conclusory assertion that was inadequately presented); *see also People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (declining to consider "a bald legal proposition presented without argument or development").

14

justice'" that "dictates that the punishment should fit the crime."

*Id.* at ¶ 1 (quoting *Weems v. United States*, 217 U.S. 349, 367

(1910)).  The inquiry must consider "the evolving standards of

decency that mark the progress of a maturing society."  *Id.* at ¶ 46

(quoting *Graham v. Florida,* 560 U.S. 48, 58 (2010)).

¶ 37    When a defendant challenges the proportionality of a sentence,

the court must conduct an abbreviated proportionality review,

which has two steps.  *Id.* at ¶¶ 10-11.

¶ 38    At step one, the court will "consider the gravity or seriousness

of the offense" for which the defendant was convicted.  *Id.* at ¶ 12.

For crimes that are not "per se" grave or serious, courts look at the

facts and circumstances of the offense to determine their gravity or

seriousness.  *See id.* at ¶ 13.  Crimes are only "per se" grave or

serious if the crime would be grave or serious in "every potential

factual scenario."  *Id.* at ¶ 63.  Thus, step one generally requires "a

consideration of the harm caused or threatened to the victim or

society and the culpability of the offender."  *People v. Session,* 2020

COA 158, ¶ 33.

¶ 39    At step two, the court must compare the gravity of the

defendant's offense with the harshness of the sentence imposed for

that offense.  *Wells-Yates*, ¶ 14.  This includes a consideration of the length of the sentence as well as parole eligibility.  *Id.*; *Session*, ¶ 37.  Whether a defendant is parole eligible is relevant during an abbreviated proportionality review because parole can reduce the actual period of confinement and render the penalty less harsh.  *Wells-Yates*, ¶ 14.

### 2. Discussion

¶ 40    Brach argues that his fifteen-year probationary sentence for POWPO is disproportionate and violates the bar against cruel and unusual punishment.  We disagree.

¶ 41    POWPO is not a per se grave or serious crime.  *See People v. Wright*, 2021 COA 106, ¶¶ 73, 77 (recognizing that POWPO does not present a sufficient level of harm or threat of harm such that it could be considered inherently grave or serious).  But "some, if not most, factual permutations of POWPO may indeed be considered grave or serious," so it is necessary to consider the factual circumstances associated with the charge and the harm caused or threatened to the victim.  *Id.* at ¶ 78.

¶ 42    Here, police were dispatched to E.M.'s home because she was scared that Brach was going to kill her.  After his initial arrest,

16

Brach made a recorded jail phone call to his mother, where he spoke about his "artillery" in his fifth-wheel camper on E.M.'s brother's property. Police obtained a warrant to search the camper, where they found a large compartment under the bed. The compartment contained numerous firearms, ammunition, and related items, and police discovered firearms and ammunition throughout the camper and property.

¶ 43    In addition to the facts and circumstances, we must also consider "aggravating or mitigating information, including other charges dismissed at the time of [a] plea, in order to best balance the competing sentencing goals of punishment, deterrence, rehabilitation, and protection of society." *People v. Austin*, 799 P.2d 408, 413 (Colo. App. 1990) (quoting *People v. Lowery*, 642 P.2d 515, 518 (Colo. 1982)).

¶ 44    Brach was charged with six counts of POWPO in Case No. 22CR1226 but ultimately pleaded guilty to only one count in exchange for dismissal of the other five counts as part of his plea deal. During the sentencing hearing and in a letter to the court, E.M. detailed her tumultuous relationship with Brach, his history of violence, his use of firearms and weapons, and her fear that Brach

17

"will come after [her] when he is released." Further, the record demonstrates that Brach has been involved with the criminal justice system for over twenty years, and his offenses have escalated in severity and violence:

- In 2000, Brach had four alcohol-related misdemeanor traffic violations.

- In 2006, Brach was convicted of assault and was sentenced to eighteen months of probation.

- In 2012, Brach was convicted of felony menacing alongside a misdemeanor charge of criminal mischief and was sentenced to five years' probation. Brach also received a five-year probationary sentence for an assault committed later in 2012.

- In 2020, Brach was charged with domestic violence assault and was ordered to complete a family violence class.

¶ 45    Considering Brach's criminal history, his risk of reoffending if he does not address his "criminogenic needs," and the original six POWPO charges against him, we conclude Brach's POWPO offense was grave and serious.

¶ 46    We next address the harshness of the sentence imposed. Brach faced a three-year prison sentence for the POWPO charge.

He would have been eligible for parole or community corrections after serving fifty to seventy-five percent of his sentence. With parole eligibility, Brach could have spent a year and a half in custody, then two years on parole. However, Brach requested and was granted a probationary sentence.

¶ 47    Brach contends that the length of probation makes his sentence too harsh. We are unpersuaded. As previously mentioned, "probation is an opportunity for an offender to avoid serving a harsher sentence." *Smith*, ¶ 8. Through probation, Brach has received more freedom than he would have received with a prison sentence, including the possibility of transferring his probation to another state. Moreover, the district court granted probation because Brach needed to participate in supervised rehabilitation and treatment services, which are less harsh than serving prison time. Finally, under section 18-1.3-204(4)(a), C.R.S. 2025, it's possible that "[f]or good cause shown . . . the judge may reduce . . . the term of probation or alter the conditions or impose new conditions."

¶ 48    Under these circumstances, we conclude Brach's fifteen-year probationary sentence does not give rise to an inference of gross disproportionality.

## III.    Disposition

¶ 49    We reverse the district court's sentence in Case No. 22CR1121 and remand for resentencing consistent with this opinion.  We affirm the district court's sentence in Case No. 22CR1226.

JUDGE FREYRE and JUDGE GOMEZ concur.